## McCausland v. Drake.

1. In an action on an assigned bond, it is not a good plea for the obligor, that the assignment was extorted from the obligee by threats of a prosecution for felony, notwithstanding the former was notified by the latter of the fraud, and required not to pay the contents of the bond to the assignee.
2 Where, in an action on a bond, a special plea in bar alone is pleaded, to which a demurrer is overruled in the Court below, and on writ of error, the judgment on demurrer is reversed, and the plea holden radically bad, this Court will render the proper judgment.

In the County Court of Madison, McCausland commenced an action of debt against J. Drake, as maker of a promissory note under seal, which had been assigned to the plaintiff by Polen, the payee. Another action of debt

was brought by the plaintiff at the same time, on a like instrument, made by A. Drake to Polen, which had also been assigned to him: and the pleadings of the one, by agreement of counsel, answered to both cases. At the August term, 1828 of said Court, the defendant filed two pleas in bar to the petition, setting forth in substance, the following matter of defence: that the assignment of the bond had been extorted from Polen, the payee, by an accusation of felony, which was made against him by the plaintiff; and by a threat that plaintiff would prosecute Polen therefor, unless he assigned the bond to him: that after Polen had thus assigned the bond, the plaintiff caused an indictment for the alleged crime, to be preferred against him, which the grand jury found not to be true: and that the defendant had been directed by Polen not to pay the money due on the bond to the plaintiff. To these pleas, the plaintiff filed a demurrer, which the Court overruled, and gave judgment for the defendant. The judgment on demurrer, of the Court below, is here assigned as error.

JANUARY 1831

McCausland
v.
Drake.

HOPKINS, for the appellant. The question for the consideration of the Court is, whether an assignee of a bond cannot maintain any action which the payee can, and whether any defence can be made against an assignee, that could not be made against the payee. These suits were on bonds, not transferrable at common law, but only under our statute; under which, the assignee is entitled to any action that the payee is. The defence set out in the pleas, might be sustained in a suit against the assignor. The consideration of the bonds is not impeached; it is only that of the assignment. Even in a suit upon a promissory note, the maker may prove there was no consideration; and so if an indorsee sue his immediate indorser, the consideration is open to investigation, and if it be found there is none, there can be no recovery. The principle embraced by the plea, is not better than that of going into the consideration of the indorsement of a note; if it be found to be without any, it is a defence, and so far, the indorser can avail himself of it. The principle of the pleas is founded in justice; but authorities shew that where there is an assignment on an usurious contract, it affords no defence to the maker, in a suit against him by the assignee. Usury affects the contract of indorsement only, but touches not the liability of the maker. He has noth

44

JANUARY 1831

McCasland
v.
Drake.

ing to do with it. unless he himself has a defence of the kind. Cases have been found, where pleas of this kind have been sustained; but they are those wherein notes were made to be sold at a discount to raise money, and were void for usury. The ground of these decisions is, that the payee could maintain no action, unless a purchaser could be found; they were made for the benefit of the makers. In them, the defect was in the consideration of the notes themselves, which makes them very different from these. Here, if the notes had not been assigned, there was no defence.[a] One who has no interest in a question, has no right to litigate it; the makers here owe to somebody, and payment discharges them: they are not bound to pay twice. Suppose a trial had been on those pleas, and verdict for the plaintiffs against the maker; this would be no evidence against the assignor, who was no party, and had no opportunity to be heard. And the assignee might still sue the assignor. in whose favor the verdict would be no evidence. So the same matter might be twice litigated, first by a party having no interest. and next by the true party in interest. It is clear the demurrer to the pleas should have been sustained.

a 15 John. R. 54—5—6. 13 Ibid 52. 2 Caines' Rep. cited in 13 John. Rep. Harden's R. 81.

THORNTON, for the appellees. The plea does state that there was a compromise of a felony, and that unless the defendant would give notes, the plaintiff would prosecute; it was a contract to that effect. The broad position of the plaintiff's counsel, would seem to be that in no case can a defence be set up to an indorsement, unless there be one to the instrument itself. This I do not admit. The statute it is true, gives all defences to indorsers, which the payees might have, but it does not exclude others. The notes here are valid, but it does not follow that the plaintiff has a right to them.[b] In a forgery of an indorsement, no title is acquired;[c] and there is no difference in principle, between a forgery and this indorsement, made on a consideration, which is void at common law. It does not follow that the payment would be a good payment. If the maker had no notice of the illegality of the assignment, it might be a good payment. But here the title of the note in law has not passed, and the plaintiff had no right of action. It does not follow of course. that if the payment was good, the defence here could not be set up by the maker. It is perhaps not obligatory on him to plead this plea; but it does not follow, that if he knows of a fel-

b 8 John. R. 76—7—8. c 4 D. & E. 32. 2 of our Ed 12.

ery in acquiring the note from the payee, he cannot defeat a recovery by the assignor. It is competent for a common law Court, to protect an assignor from being defaulted [a] There is no difference between the situation of an acceptor of a bill of exchange and the maker of a promissory note [b] The Connecticut authority may seem to go to the consideration, but it shews that such parties may make such defence. The only exception and only authority the plaintiff's counsel has produced, are cases of usury in the indorsement. Usury laws are severe; they are unfavorably viewed, and only the borrower is protected. This is the ground in Kentucky, in the case cited from Harden: it is compelling a party to take advantage of a thing he might waive were he present. Here the case is a compromise of a felony. the public is concerned; it is not a mere matter of personal injury. The law itself and the Court will interfere, and not suffer it to go on in its presence, even were the party willing to waive the objection. The majesty of the laws will not permit it. There is no force in the argument that the verdict is not evidence between other parties in a suit upon the same paper; for if another action is brought. the same facts will exist as a bar. The Court is urged to make the defendant pay a claim fraudulently obtained. Penalties of usury in this State, are more heavy than in Kentucky; yet even here, the assignee could recover against the maker, where the paper is usuriously assigned, and the reason is, that the contract is not void, for the payee might waive it. But here the notes were acquired wrongfully, and there was in law no transfer. It is a contract not only bad, but of public injury to the whole community.[c] which makes it not only voidable, but absolutely void; and being void no right can be acquired under it.

HOPKINS, in reply. The defendant's counsel would contend that the sole object of the statute of usury is of private and not of public policy, where in fact there is no statute more expressly founded on the latter consideration. In some cases, the money borrowed at an usurious rate. is a benefit to the borrower; yet he can defend under the statute, for the obvious reason that it is against public policy. Some are benefitted, while the great majority are injured. The statutory prohibition is as strong as the common law. The case in Term Reports, shews that even here, the maker might defend himself; an obligor can al-

*Margin:* JANUARY 1831

McCausland
v.
Drake

*a* 1 Camp. R. 45
*b* 1 Conn. R. 329.

*c* 2 Camp. R.

ways plead *non est factum*, which would be good here, if it was sworn that the indorsement was forged. The case from Campbell, is one of the class in which I admitted no action would lie by an assignee, for the reason that the original consideration is void. So the cases cited do not apply; they are within exceptions. The only case that bears on the question, is that from 8th Johnson, and if there was no other ground of decision, than that stated in the opinion, then by the case in 15th Johnson, it was overruled; and now the law is understood in New York as in other States. Individuals may make special stipulations, exempting themselves from the operation of particular provisions of law, grounded on public policy, as in the case of a carrier, who may limit his liability. If individuals can thus control public law, the legislature certainly can, and they have done so by a statute, providing that any action may be maintained by an assignee, which the assignor could. Courts will not suffer a matter to be twice litigated; for if in a former recovery, the verdict is evidence, collusion and injustice might ensue; the proper evidence might not have been produced; so the indorsee would be injured by a suit, to which he was no party. Again, if the former verdict were no evidence, then the same matter might be twice tried, and adjudged differently even on the same testimony. This would be placing parties to an instrument in a strange situation; a verdict on it different ways, which might excuse the maker, and hold the assignor liable.

By JUDGE SAFFOLD. No objection is made as to the validity of the bond as between the defendant and Polen, the payee; on the contrary, it is admitted to have been a *bona fide* and subsisting debt. Then the question arises, whether the illegality of the consideration of the assignment, consisting in the composition of an alleged felony between the assignor and assignee, constitutes matter of legal defence by the maker, even when urged at the request of the assignor; and after a *violation of the stipulation* on the part of the plaintiff, by a fruitless attempt to institute the prosecution. With respect to the latter branches of the defence, it is deemed sufficient to remark, that neither the request of the assignor, nor the violation of the contract, as described, can vary the effect of the assignment. The assignor not being a party to the suit, the judgment cannot be used as evidence, either for or

against him; consequently, he has no legal right to direct
the defence, or in any manner control the suit.   And the
consideration being at best illegal, the failure thereof, or
violation of tne terms stipulated, cannot increase the ob-
jections to it.

But the main question, and one highly important in its
nature, is that which relates to the illegality of the contract
of assignment.   It is a general principle of law, that the
maker of a bond or note, cannot be affected by the nature
or terms of any future assignment of the instrument; that
his defence can neither derive aid, or receive prejudice
thereby.   In opposition however to this doctrine, the de-
fendant's counsel has referred, among others, to the case
of *Strong v Tompkins*,[a] which has afforded him a very [a] 8 John. R.
plausible argument; and if the note which was the founda-   76.
tion of that suit, is to be regarded as the evidence of a debt,
created on a valuable and sufficient consideration, and sub-
sisting between the original parties, previous to the assign-
ment; and if there be nothing peculiar in the principles
of that decision, excepting it from the general rule in re-
lation to illegal contracts, it would appear to go as far as any
one decision of the Supreme Court of New York can do,
in sustaining the contrary doctrine.   In that case, the plain-
tiff as deputy sheriff, took an assigned note, instead of taking
bail of the defendants, on whom he had served a process,
requiring bail.   He received the assignment to himself, by
way of indemnity, and under the penalty of a forfeiture
of the note, if he was not indemnified; and the note was
to be applied towards the settlement of the demand, for
which the defendants were sued.   All this agreement was
held to be absolutely void by the statute of that State,
which declares that "no sheriff or other officers shall take
any obligation, for any cause aforesaid, or by color of their
office, but only to themselves, and by the name of their
office, and upon condition written," &c; and that "if any
sheriff or other officers, take any obligation in other form,
by color of their office, it shall be void."   In arriving at
their decision, that Court recognised the rule, that though
their statute speaks only of an obligation, yet that a pro-
mise to save harmless, was equally within the statute.
They held the assignment to be a nullity, and that it affor-
ded the deputy sheriff, as assignee, no more right to sue,
than if the name of the payee had been forged.

The report of the case does not explicitly shew whether
the note then in question, had been previously created on

JANUARY 1831 valid consideration, between the original parties to it; or whether they manufactured it for the purpose of offering it as an indemnity to the sheriff, for omitting to take a bail bond. But from the vague notice taken of the note, perhaps the former conclusion is best warranted. It is however to be observed, that the indemnity was taken by a ministerial officer, in the execution of a public trust, and in direct violation of a statute, expressly declaring such to be void In the decision, stress is laid on the very great abuse and oppression which were apprehended from similar practices, if tolerated, and the facilities which would thereby be afforded to elude the provisions of a very beneficial statute. In support of the contested principles of this decision, no other authorities were cited by the counsel; but the Court referred to two other cases of violation of the same statute by sheriffs, who had taken for their indemnity, securities created for the express purpose. They were the cases of *Love v. Palmer, et. al* [a] and *Reed v. Pruyn & Staats* [b] It may therefore be inferred, that no discrimination was attempted between the illegal assignment of a valid security, and the creation of an instrument originally void for illegality, or at least none was allowed. That such distinction exists, is maintained by the whole current of authorities.

Another case relied on by the defendant's counsel, is that of *Wallace v. Hardacre*.[c] In that case, Maine who became the indorser of the bill sued upon, had passed several bills to Wallace for a valuable consideration, on which he had forged the acceptances of a Mr Addison, his uncle. Maine dreading the consequences, took up the forged bills, and having procured the acceptance of Hardacre to the bill which was the subject of the suit, indorsed the same to Wallace, in lieu of the former, he knowing all the circumstances. The acceptor, it is admitted, had received no value. Lord Ellenborough held, "that to bar the right of the indorser, it was necessary to shew that the bill had been indorsed as a consideration for compounding a prosecution for forgery, to which the indorser was liable." That if any bargaining could be shewn to stifle a prosecution for a criminal act, the action could certainly not be maintained: but otherwise, the mere exchange of securities that had been forged for others without this vice, would not invalidate the plaintiff's right to recover against the acceptor of the latter bill. The corrupt bargain not having been shewn, the plaintiff recovered; and though the

*McCausland v. Price.*

*a* 7 John. R. 159
*b* 7 John. R. 426.

*c* 1 Camp. R. 45.

Court ru'ed that such corrupt bargain would have preven-
te l a recovery by the assignee, doubtless it was and ought
to have been considered a material feature in the case, that
the bi l h d no valid existence as evi lence of a debt, pre-
vious to the assignment to the plaintiff: that it was created
f or the express purp se, and that the acceptance was with-
out consideration. These were facts essentially different
from the case under consideration.

On the same side, the case of *Mead v. Young* [a] is re- *a* 4 D. & E.
lied on as an au hority, denying the right of the present 30.
plaintiff to recover. Tha case only recognises the prin-
ciple which this Court fully admits, and which has seldom
been contested in modern times, that under a forged as-
signment of a bill, the assignee, however innocent, can
acquire no leg l right of action. And though the assign-
ment was made by a different person, bearing the same
name with the true payee, yet as he knew he was not the
proper person, it was no less a forgery. But the case of
*Littell v. Hord,*[b] cited on the part of the plaintiff, main- *b* Harden R.
tains the principle favorable to his right of action. That 21.
was an action of debt on a bill, si gle by the assignee
against the obligor. The bill was *bona fide* between the
original parti s, but had been as igned to the plaintiff in
the consummation of an usurious contract; this was the
defence relied on, and usurious contra ts, by the statute
of Kentucky, wer declared to be illegal and void. But
the Court held, that however unfair and usurious the con-
tract between the assignor and assignee may have been,
the obligor could not have been injured by it; that pay-
ment to the holder of the writing, under a regular ass gn-
me t to him, would have been a complete discharge of the
obligation; and that the pleas only contained matter *inter
alios acta,* of which the obligor could not avail himself.

The principles of the case of *Munn v. Commission
Company.*[c] which is also referred to in the argument, are *c* 15 John. R.
entitled to some influence on this question. There, a bill 44.
had been assigned under circumstances which were con-
tended to have been usuri..us. The Court remarked in
their decision, that "the principle was too well settled to
be qu stioned, that a bill free from usury in its concoction,
may be sold at a discount, by allowing the purchaser to
pay less for it, than it would amount to at the legal rate of
interest, for the time the bill had to run." The reason
they assigned for the rule, is more material to the present
contest. It was, that "as the bill was free from usury, be-

JANUARY 1831

McCausland
v.
Drake.

a 1 Stewart's
R. 259.

tween the immediate parties to it, no after transaction with another person can, as respects those parties, invalidate it." A similar doctrine is maintained in the case of *Faris & Powell v. King.*[a]    That being a question of usury, this Court adjudged the original contract void, but observed in the opinion, that "if a note or bond be given on a legal consideration, and free from usury in its origin, no subsequent illegal contract, in which it may be transferred, can impair the holder's right of action against the original debtor."

From the principles of the various decisions I have reviewed, and the general analogies of the law, I think it results that though a bond or note has a valid existence between the original parties, yet if the assignment upon it be in fact a forgery, or be made by any one without authority; or under any circumstances, which will sustain the defence, that the assignment is not the act of the assignor, for the reason that no actual or sufficient assignment has been made, the maker, though justly indebted to the payee, may successfully resist a recovery by the fictitious assignee, and the debt continues to subsist in favor of the payee or other rightful holder. · But if the instrument has been executed for a valid consideration between the original parties, and the payee has voluntarily assigned the same, he has thereby transferred to the assignee, whatever right of action he had. It is immaterial to the original debtor, to whom he is required to make payment; the want of consideration, fraud, or illegality between the assignor and assignee, is a matter of perfect indifference to him. He ought not to be permitted to question the motives of others, in which he has no interest or concern. If a felony was compounded between the assignor and assignee of this bond, the former was no less criminal than the latter; and it is with an ill grace that either can afterwards complain of it in a Court of justice.   A well settled rule of law in such case is, that Courts of justice will not investigate illegal transactions for the benefit of a *particeps criminis*; nor will they adjust fraud alleged to have been committed in the assignment of a negotiable or assignable security, in an action against a primary debtor; but if either of such subsequent parties has sustained an injury, that the law will redress, he must resort to his direct action for indemnity. Suppose in this case, the assignor, instead of transferring the bond, had paid the same amount in money, for the same consideration, or had delived an article

of property, and should afterwards sue the person with whom he contracted, to recover it back, he would doubtless fail under the maxim, *ex turpi causa non aritur actio*, and *melior est conditio possidentis*.

JANUARY 1831

McCausland
v.
Drake.

Hence we are of opinion, that the judgment of the Court below was erroneous; and in as much as the pleas were in bar, and the defendant could, under the statute, also have pleaded the general issue, or any other special matter in bar; from the circumstance of his not having done so, he must be presumed to have had no other defence; therefore a majority of the Court are of opinion, that the judgment of the County Court be reversed, and that this Court render judgment for the plaintiff, for the amount of the note.

By JUDGE CRENSHAW.  The inquiry is, whether the assignment of the bond on the consideration, and under the facts set forth in the plea, conveyed any right of property to the plaintiff, and is this an available defence in an action by the assignee against the maker of the bond?

In pursuing a train of reasoning, independent of the rules of law, the mind would naturally and readily conclude, that the assignment transferred no right of property or of action to the plaintiff; that though Polen was not strictly under any physical duress, yet the charge of an infamous crime, the threat to prosecute, and the rigorous condition prescribed, to prevent that threat from being carried into effect, must have had such an influence on his fears and apprehensions, as to deprive him of that free and voluntary consent, which was morally essential to the validity of a contract.   That through these improper means, the transfer of the bond was literally, and in the language of the plea, extorted from the defendant by the plaintiff, and consequently gave him no right of property or of action.   By a recurrence to the rules and principles of law, I think this deduction will be equally clear.   Every lawyer must admit, that it is unlawful to compound a crime, or to stifle a prosecution for a felony, and that every contract made on such consideration, is null and void.   Supposing then that Polen was under no constraint, either physical or molrae, yet as the consideration of the transfer of the bond was the compounding a crime, or the stifling a prosecution for a felony, he lost nothing, nor did the plaintiff acquire any right by the transfer.   In *Wallace v. Hardacre*,[a] which was an action by the indorsee against the acceptor of a bill of exchange, Lord Ellenborough held, "that in

a 1 Camp. R.
45.

45

JANUARY 1831

McCausland
v.
Drake.

order to bar the right of the indorsee, it was necessary to shew that the bill had been indorsed as a consideration for compounding a prosecution for forgery, to which the indorser was liable; and that if any bargaining could be shewn to stifle a prosecution for a criminal act, the action could not be maintained." This was a case of negotiable paper, in the strictest sense; the action was by the indorser against the acceptor of the bill, and yet the principle was fully recognised, that it wrs competent for the defendant to shew that the consideration of the indorsement was to compound, or stifle a prosecution for a criminal act, and that this would be a sufficient defence to defeat the plaintiff's action.

*a* 4 Term R. R. 20.

So in the case of *Mead v. Young,*[a] which also was an action by the indorsee of a bill of exchange against the acceptor, and on which the indorsement had been forged, it was held that the indorsee, though an innocent holder, for a valuable consideration, could not recover against the acceptor.

*b* 8 John. R. 76.

The case of *Strong v. Tompkins,*[b] is to the same effect. In that case, a deputy sheriff, instead of taking bail from the person whom he had arrested, took from him a negotiable note, which he indorsed to the deputy. In an action by the deputy as indorsee, against the maker of the note, it was determined, that the transfer to the deputy was illegal and void, and that this was a good defence to an action against the maker. The express language of the Court is, "that the plaintiff had no right of property in the note, that he was not the legal holder, because the assignment to him was a nullity, and that he had no more right to sue the defendant, than if the indorsement had been forged." The reason why the deputy acquired no right of property or of action, by virtue of the indorsement was, because it was unlawful for him to take a note by color of his office. In that case, the note was good as between the maker and payee, because nothing to the contrary is intimated, though it was held that the assignment was a nullity. If from these cases, the one at bar can be distinguised in principle, I confess that I am unable to discover the distinction.

In the case cited from Term Reports, the indorsement was held to be void, because it was forged. In the case from Campbell, it was held to be void, if the consideration of the indorsement had been the composition of a crime, or the stifling of a criminal prosecution. In the case from Johnson, because it was unlawful for the deputy sheriff to

take the note by color of his office. In all of them, the ground and principle of decision is, that the indorsement of a transfer was void, because the act of the indorsee in obtaining the transfer was unlawful. In all these cases, the note or bills were good in their creation, and the indorsement alone was void. So in the case under consideration, the composition of a crime, or the stifling a prosecution for felony, was an unlawful act, and the assignment of the bond on this consideration, was a nullity, and conveyed to the plaintiff no right of property or of action. Polen, the assignor, parted with no right; he may yet sue the obligor and recover the debt, as though the bond had never been assigned. I am satisfied, that both on reason and authority, the judgment of the County Court should be affirmed; and with me, JUDGES COLLIER and WHITE concur.

By JUDGE COLLIER. In the opinion delivered by me, in the cases of *Carrington v. Caller,* and *Meggison v. Holder & Hill*,[a] it is stated upon authority, that a Court of justice will not lend its aid to the enforcement of a contract, corrupted by political taint. That rule I consider decisive of this case, and proves that the plaintiff has no just cause of action. The compositon of a felony, all admit, is against the policy of our laws, and cannot be the consideration of a contract; but it is attempted to distinguish between the illegality of the consideration, where it is set up as a defence between the parties to the contract, and where it is done by a stranger against one of the parties. The justness of this distinction, may be best tested by examining the principle of the rule itself. The object of the law is to repress vice, and advance the welfare of society, and in a measure to effect that end, it denounces as invalid, every contract which thwarts the policy of the State.[b] The object of the rule being then, advantage to the public, its usefulness it is apprehended would be greatly impaired, by limiting its operation, to the enforcement of a contract between the immediate parties to it. It would certainly be more compatible with the general analogies of the law, which extends the influence of a rule, to the reason which sustains it, for the tribunals of justice to withhold their assistance, whenever the party invoking it, requires the aid of the illegal transaction to establish his case. And short of this, authority has not prescribed a limitation to the rule.[c] The plaintiff cannot claim the benefit of

*JANUARY 1831*

McCausland
v.
Drake.

[a] 2 Stewart's R. 175.

[b] 11 Wheaton 258 4 Pick. Dedham Bank v. Chickering, et. al.

[c] 7 Taunt. 246. 11 Serg. & Rawle. 164. Swan v. Scott. See also Chitty on Bills Ed. 1839, p. 87.

JANUARY 1831 this limitation, because he deduces his title to sue through an indorsement, the consideration of which, is illegal and forbidden.

McCausland
v.
Drake.

In *Hall v. Miller*,[a] it is determined that no right can be derived under any contract, made in express opposition to the laws of the place where it is made. The contract, here attempted to be enforced, is confessedly opposed to our laws, and if it passed no right, it would be a solecism to suppose, that there was a subsisting remedy for its enforcement. In *Lowes and another, v. Mazzeredo and others*,[b] the plaintiffs as indorsees, brought their action against the defendants, as acceptors of a bill of exchange; the bill was drawn by one G. Lowes, and indorsed to Sir M. B., and by him to Ambrose, and then to the plaintiffs. The defence was usury in the first indorsement, and which was proved. Lord Ellenborough was of opinion, that the plaintiffs were not entitled to recover upon the bill, since they were obliged to claim through an indorsement, which had been vitiated by usury. Upon the counsel for the plaintiffs insisting upon the case of *Parr v. Eliason*,[c] his lordship permitted the plaintiff to take a verdict, subject to a motion to enter a nonsuit. A rule *nisi* having been obtained and cause shewn, the Court were of opinion, that the case of *Parr v. Eliason*, was distinguished from this, and might be supported upon other grounds, and that the indorsement was entirely avoided by the statute of usury.

There is an obvious conflict between the case last cited, and that of *Littell v. Hord*, noticed in the opinion of the majority. The former case is founded upon the rule, that Courts are not open to enforce a contract, originating in a source foul or illegal. The latter maintains the propriety of its enforcement, when not objected to by a party to it. And it is indisputably clear, if it be true that no rights are derived under an illegal contract, that *Lowes v. Mazzeredo*, is the better authority, and that *Littell v. Hord*, entirely mistakes the principle on which illegal contracts are held void. While the composition of a felony is admitted to be an illegal consideration, it is declared by a majority of the Court to be the law, that as both the contracting parties are equally guilty, the transaction will not be investigated for the benefit of either; but the party injured, must resort to his action for an indemnity. If this proposition be just, then contracts in themselves illegal and fraudulent, are to be enforced, and Courts of jus-

a 5 Har. & J. 193.

b 1 Starkie 385.

c 1 East. 92.

tice are to refuse to entertain defences alleging these causes; this would be strange; it is nevertheless a necessary consequence. The proposition gains no aid by the application of the maxims, *ex turpi causa non oritur actio*, and *in pari delicto melior est conditio defendentis*, which have been quoted as sustaining it; the application of these, prove it to be not well founded.

I do not feel myself called on to give this case a more extended examination; the doctrine to the consideration of which it invites, was very fully gone into in *Carrington v. Caller*, and *Meggison v. Holder & Hill*, and the authorities commented on by the majority, furnish a sufficient antidote to the prevalence of the legal tenets advanced in their opinion. Entertaining these views, it is with great deference that I avail myself of the remark, that I shall not consider myself concluded by the opinion of the majority, when an analogous case shall come before this Court for revision.

Reversed and rendered.