# Broughton v. Mitchell.

*Bill in Equity by Vendor and Assignee, against Purchaser of Land, to enforce Payment of Purchase-Money.*

1. *Parties to bill, on assigned chose in action.*— When the cause or subject of the suit is a legal chose in action which has been assigned, the assignor is, in all cases, a proper party, either plaintiff or defendant; and when the legal title still remains in him, or the assignment is not absolute and unconditional, or its extent or validity is disputed, he is a necessary party, that he may be bound by the decree, and further litigation be prevented.

2. *Misjoinder of complainants.*— The rule as to the misjoinder of complainants which refuses relief to any of them unless all are entitled to relief, does not apply to a bill filed by the assignor and assignee of a chose in action jointly.

3. *Assignment of purchaser's obligation to pay purchase-money, after default.* The assignment, for valuable consideration, of the purchaser's obligation to pay the purchase-money for land, as evidenced by the written contract signed by him and his vendor, is not champertous, nor void for maintenance, merely because he had already made default, and the vendor and assignee both knew that a suit would be necessary to enforce his liability; nor can he be heard to question the validity of the assignment, when sued by them jointly

4. *Written contract, and parol stipulations.*—When a contract is reduced to writing, and signed by both parties, the writing becomes, in the absence of fraud or mistake, alleged and proved, the sole expositor of the terms of the contract: all prior verbal stipulations are either merged in it, or superseded by it.

5. *Contract for sale of lands; dependent and independent covenants or stipulations, and actions thereon*—When a contract for the sale and purchase of lands, as reduced to writing and signed by the parties, contains mutual dependent covenants as to the payment of the purchase-money and the conveyance of title, neither party can maintain any action upon it, either at law or in equity, against the other, without averring and proving performance on his part, or a readiness and willingness to perform, and, according to some authorities, notice to the other party of such readiness and willingness. But, where the contract stipulates that the purchase-money is to be paid on or before a specified day, and that a conveyance is to be executed at a subsequent time; as, when the vendor is to make a conveyance so soon as he obtains title from *his* vendor, by the terms of the contract between them, which is at a time subsequent to the day specified for the payment of the purchase-money by his sub-purchaser; in such case, the covenants are independent, and an action may be maintained for the purchase-money, after the day specified for its payment, without making or offering to make a deed.

[Broughton v. Mitchell.]

6. *Purchaser's rights and remedies, when sued for purchase-money.*—When a bill is filed against the purchaser, who is in possession under the contract, to subject the lands to the payment of the purchase-money, a cross-bill is the proper remedy to obtain a conveyance of the legal title ; and when the legal title resides in the complainants, though no cross-bill is filed, satisfaction of the decree for the purchase-money would probably estop them from asserting the legal title against him.

7. *Interest, as between vendor and purchaser.*—Interest attaches, as a matter of right, to a contract for the payment of money, from the day on which it becomes due, and the courts, both of law and equity, have no discretion as to its allowance ; but interest does not draw interest, and a court of equity will not allow it, as between vendor and purchaser, in the absence of special circumstances.

APPEAL from the Chancery Court at Montgomery.

Heard before the Hon. H. AUSTILL.

The original bill in this case was filed on the 27th May, 1874, by Lucco Mitchell and T. B. McCall, against John A. Broughton ; and sought to subject a tract of land, of which said Broughton was in possession, to the payment of the agreed purchase-money, according to the terms of a written contract between him and said T. B. McCall ; and an amended bill was filed, after answer, making Mrs. Jane C. Boyden, who was the mother of said Lucco Mitchell and the widow of Dr. Lucco Mitchell, deceased, and who had a dower interest in the lands, a co-complainant with said Mitchell and McCall.    Mrs. Laura A. McCall, the wife of said T. B. McCall, was also made a defendant to the amended bill, because she had signed the contract between her husband and Broughton, and the answer to the original bill alleged that she had an interest in it ; but she disclaimed all interest, and admitted all the averments of the bill.

The land involved in the suit is part of a tract which belonged to Dr. Lucco Mitchell at the time of his death, which occurred in January, 1838.    The entire tract consisted of about 560 acres, being parts of sections two (2) and three (3), in township thirteen (13), range fifteen (15).    Dr. Mitchell left but two children, one of whom died in the year 1859, never having married ; and his widow married Nathaniel Boyden, in December, 1845.    On the 5th November, 1860, Geo. S. Cox, acting as the agent of said N. Boyden and Lucco Mitchell, who lived in North Carolina, entered into a contract for the sale of said lands to said T. B. McCall, one of the complainants in the bill ; the contract, as reduced to writing, signed by said Cox and McCall, and attested by two witnesses, being as follows :    "Memorandum of contract of purchase of land, between T. B. McCall, of Lowndes county, Alabama, of the one part, and Nathaniel Boyden and Lucco Mitchell, both of Salisbury, N. C., on the other ; G. S. Cox acting as agent for the two last named persons, by authority

in writing. Lucco Mitchell, for himself, and said Boyden for his wife, who has a dower interest in said land, by said Cox, their agent, sell to T. B. McCall, above named, the west half," &c., "situate and lying in Lowndes county, Alabama, for the sum of $11,700, due and payable on or before the first day of January, 1862, with interest from the first day of January, 1861, payable to said Nathaniel Boyden and Lucco Mitchell; and the said Boyden and his said wife, for themselves, and for her dower interest, and the said Lucco Mitchell, are to make good and sufficient titles of said lands to said McCall, his heirs and assigns. In witness whereof," &c.

About the same time, or very shortly afterwards, McCall sold a portion of the land to Broughton; and they afterwards signed a writing, as evidence of their contract, in the following words, as set out in the transcript: "Memorandum of contract of purchase of land, between John A. Broughton, of Morgan county, State of Georgia, on the one part, and T. B. McCall, of Lowndes county, Alabama, and his wife, Laura A. McCall, of the other part, sells to the said John A. Broughton the following named and described lands, to-wit," describing them, "for the sum of four thousand nine hundred and fifty-one 95-100 dollars, due and payable on or before the first day of January, 1861, payable to the said T. B. McCall and Laura A. McCall, his wife, for themselves, are to make good and sufficient titles of said lands to said Broughton, his heirs and assigns. Now, the condition of the foregoing obligation is such, that whereas the said T. B. McCall and wife, Laura A. McCall, now holds a certain instrument in writing, signed N. Boyden, Lucco Mitchell, by Geo. S. Cox, agent, legally constituted, and attested by Thos. M. Williams and D. W. Johnson, to make the said McCall and wife a good and lawful title; then, and not till then, do the said McCall and wife comply with the above obligation. This contract was entered into between we, the said John A. Broughton and T. B. McCall, the 5th day of November, 1860, but never reduced to writing till this day. In witness whereof, we, T. B. McCall and wife, Laura A. McCall, and John A. Broughton, do hereunto set our hands and seals, this 24th of February, 1863." (Signed by the said parties, and attested by two witnesses.)

This writing was prepared by Broughton, and was left in his possession after being signed. Each party went into possession of his portion of the land, which adjoined other lands owned by them respectively, being separated by a north and south line running through the entire tract; Broughton's portion containing about 240 acres, while the portion retained by McCall contained about 320 acres. On

the 25th January, 1863, McCall paid Cox, as agent of Boyden and Mitchell, $500 in Confederate treasury-notes, as part payment on account of the land; and, by the direction of Cox, he deposited the residue of the purchase-money, also in Confederate treasury-notes, in the Central Bank of Alabama, at Montgomery, until Cox could correspond with his principals in North Carolina. It seems to be an admitted fact, that Boyden refused to receive the Confederate money, and that it was then withdrawn from the bank by McCall; and no other part of the purchase-money was ever paid, either by McCall, or by Broughton. But the testimony of Cox, as copied in the transcript, is in these words: "I wrote to Boyden what had been done. He replied, that he *would*(?) take Confederate money; of which I informed McCall, at first sight. I believe I left with McCall a receipt for the money, provided he made the deposit as described. He refused to pay any other money." The original bill alleged Mitchell's ownership of the tract of land on the 5th November, 1860; the sale by Cox, as his agent, to McCall; the subsequent sale by McCall to Broughton; that Broughton took possession under the contract, and had retained it without interruption, and had never paid any part of the purchase-money; and "that said T. B. McCall has traded and transferred said claim on said John A. Broughton to your orator Lucco Mitchell, and the same is now his property, so traded for a good and valuable consideration." The prayer of the bill was, "for all general relief, to which orators are entitled under the averments of this bill; for an account, to ascertain the amount due from said Broughton on said purchase; that he be decreed to pay said sum to your orator Mitchell; that said lands be decreed to be sold, and be sold, and the proceeds paid to said Mitchell." The amended bill alleged, also, that Mrs. Boyden fully approved and ratified the sale made by Cox, "and now fully ratifies the same, and elects to claim her interest of the proceeds under said sale by McCall to said Broughton; and your orators, Mitchell and McCall, concede her right to a sum of money equal to the value of one-third of the rents and profits, or one-third of the interest on said sale, as the court may decree."

Broughton, in his answers to the bills, original and amended, admitted his purchase of the land from McCall, his entry into possession under that contract, and the subsequent reduction of the contract to writing, as above copied, the original being annexed to his answer as an exhibit. He alleged that McCall, in his dealings with Cox, acted for their joint benefit, and informed him that he had paid the purchase-money in Confederate notes; that the amount specified in

the writing, as his proportionate part of the entire purchase-money, was to be paid in Confederate treasury-notes, and was not to be paid until McCall had obtained titles to the lands; that after McCall withdrew the money which he had deposited in the bank, and informed him of the fact, McCall never made any demand on him for payment of the agreed purchase-money, and never offered to make him a deed, and never was able to comply with his part of the contract; that he continued in the possession of the land, but did not claim to hold it under his contract with McCall; that he intended to hold it until the owner claimed it, or until he acquired a title under the statute of limitations; that McCall well knew these facts, and held his portion of the land in the same way; that Cox had no authority to contract in reference to the sale of Mrs. Boyden's interest in the land, and she never ratified his act in doing so until the filing of the amended bill. He admitted that he had never paid the purchase-money, and denied that he was liable to pay it to the complainants. He insisted, by way of plea, that the transfer of the claim on him by McCall to Mitchell was champertous, and void for maintenance, because he had informed both McCall and Mitchell's attorney, before the alleged transfer was made, that he repudiated the contract, would not pay the purchase-money, and would not accept a conveyance of the lands, if tendered. He insisted, also, that he was released and discharged from all liability to either McCall or Mitchell, because, a short time before the bill was filed, Mitchell brought an action at law against McCall, to recover the portion of the lands which was in his possession, and another against respondent for his portion, thereby disaffirming the contract made by Cox; that he accepted service of the writ, and proposed to surrender the possession, if the other suit went against McCall, or to let the suit against him abide the result of the suit against McCall; and that Mitchell afterwards compromised the suit with McCall, released him from all liability, and conveyed to him his portion of the land, in consideration of McCall's transfer to him of the claim against respondent; and he insisted that this also discharged him from all liability. He insisted, also, that McCall had forfeited and relinquished all right to proceed against him under the contract between them, and could not transfer to Mitchell any greater rights than he himself had; and that if the complainants, or any or either of them, had any right of election to ratify and enforce the contract against him, they ought to have made that election within a reasonable time, and it was inequitable to allow them to enforce it after the

lapse of so many years, when the value of the land had depreciated from $20 to $3 or $4 per acre.

The complainants offered in evidence, on the hearing, the depositions of said T. B. McCall, Mrs. Laura A. McCall, Lucco Mitchell, Mrs. Jane C. Boyden, George S. Cox, and Archibald Henderson; and the defendant, the depositions of himself and W. E. Alexander. Cox testified as to the contract which he, as the agent of Mitchell and Boyden, had made with McCall, for the sale of the land; and there was no controversy as to these facts. Henderson was the brother of Mrs. Boyden, and also testified to facts as to which there was no controversy. Mrs. McCall disclaimed any interest in the land, and said that she did not sign the contract between her husband and Broughton. Mrs. Boyden testified, as to the contract made by Cox: " I did not know that I had any interest in said land, and I never concerned myself about the matter, but left everything to my husband, Nathaniel Boyden. I do not know now that I have any interest in the land, but I agree to be bound by said sale, and am willing to comply with it on payment of the purchase-money, none of which has ever been paid to me, or to any one else with my authority or knowledge;" and she further testified to her ignorance of the contract between McCall and Mitchell, as to the institution and prosecution of this suit, but knew that attorneys had been employed in the matter, and trusted every thing to them. As to the contract between himself and Broughton, McCall testified that, before he made the contract with Cox as agent, he informed Broughton of his intention to make it, and agreed with him as to a division of the land between them, at the same price he might agree on with Cox; that he informed Broughton of the contract with Cox so soon as it was made, and delivered to him the possession of the land which he has to have; that their contract was never reduced to writing until February 24, 1863, when his vendors had refused to receive Confederate money; that he informed Broughton of this refusal at the time, and that no other contract was afterwards made between them in reference to the land. He further testified, in answer to cross-interrogatories: " I told said Broughton all about the transaction between Cox, Boyden and myself, and that it was doubtful about Confederate money being received in payment. Said Broughton always told me that he was ready to pay for his part of the land, when I could make him a title to the same;" " Broughton and myself had several conversations about the land afterwards, and the payments to be made for the same; and we both said, that if the worst came to the worst, we would surrender the lands to the ven-

dors, if we thought it best. As to the amounts to be paid
by us respectively, that was arranged between us at the out-
set, by the contract afterwards reduced to writing; and there
was no change or modification of said contract afterwards
made. We talked about acquiring title to said land by
holding possession until the statute of limitations would bar
the vendors from recovering it; but there was no agreement
that either of us should hold any particular portion of the
land. We made no agreement to surrender in case a claim-
ant for said land should appear, but we concluded to do the
best we could in such case. All this occurred after the close
of the late war."

In reference to the transfer of his claim on Broughton to
Mitchell, McCall further stated, on cross-examination, that
he "surrendered said claim" to Mitchell's attorney in the
action at law, "in settlement of said suit;" that the transfer
was made after consultation with his attorney, and after
Broughton, who had also consulted an attorney, had informed
him that he would not accept a deed for the land, if tendered.
The agreement as to the compromise or settlement of the
action at law against McCall, which was signed by Mitchell's
attorney, was in these words: "In this cause it is agreed,
that the cause is to stand continued on the docket until the
final decision of a chancery suit, to be brought in favor of
T. B. McCall and Lucco Mitchell, against John A. Broughton,
to recover of him the sum of twenty dollars per acre for the
purchase-money of a tract of land, of 247.5 acres," describ-
ing it; "the amount due being $4,951, due, or bearing inter-
est from January 1, 1861; and if a decree is rendered against
said Broughton, recovering said sum, with interest, and sub-
jecting said land to its payment, and holding said Broughton
personally accountable for said purchase-money, with inter-
est, and said decree is not *rendered(?)*; then, without hold-
ing said McCall personally for said decree and its payment,
the suit mentioned at the head of this agreement is to be
dismissed, at the costs of said McCall, upon condition that
he pay to the said Lucco Mitchell $400, with interest from
this date, or, at his option, surrender to said Mitchell that
portion of said lands retained by said McCall, in the east
half of the north-west and the south-west quarter of said
section two (2), township 13, range 15, believed to be the
substance of the west half of the said two eighties; with the
further agreement, that when this cause is settled, according
to terms above, and said balances paid, then a quit-claim
deed is to be made to said McCall, conveying to him the res-
idue of the tract that will then remain to him, of the tract
which was purchased by said McCall at the same time," de-

scribing it, "to be conveyed by said Mitchell to him, should the above conditions be complied with," &c. Broughton's testimony was, in substance, the same as his answer, so far as it stated facts.

On final hearing, on pleadings and proof, the chancellor held that the complainants were entitled to relief, and that the land in Broughton's possession was liable for the purchase-money, as stipulated in the written contract between him and McCall; but he refused to charge him with interest before the filing of the bill. He rendered a decree accordingly, and ordered the land to be sold unless the amount ascertained to be due was paid into court within thirty days; and the record shows that Broughton paid the amount to the register, $5,566.73, within the thirty days. Each party appeals from the decree, and each assigns error; Broughton assigning as error the decree subjecting the lands to the payment of the purchase-money; and the complainants, the refusal to charge Broughton with interest.

D. S. TROY, for Broughton.—1. Broughton had agreed to buy the land, had gone into possession under this contract, still retained the possession, and had paid no part of the purchase-money; and regarding these facts only, which seemed to fix his liability, the chancellor rendered a decree against him for the purchase-money. But, in considering the right of the complainants to assert this liability under the facts proved, he was met with difficulties which forced him to deny their right to interest before the filing of the bill; and these facts, it is insisted, when properly considered, show that the complainants were not entitled to recover either principal or interest, as against Broughton. Broughton dealt with McCall only; and the latter could not, by transferring his interest to Mitchell, confer on his assignee greater rights than he himself possessed; and even if he could do so, yet, being joined as a complainant in the bill, if he was not entitled to recover, the bill should have been dismissed.— *Waring v. Lewis*, 53 Ala. 630. Whatever equity Mitchell and Mrs. Boyden may have against both McCall and Broughton, is outside of the allegations of the bill, which seeks only to enforce the contract between McCall and Broughton; and no recovery can be had on that contract, because of the material discrepancies between the allegations and proof. Instead of a purchase by McCall for his own benefit, and a re-sale to Broughton of a portion of the land as alleged, their testimony shows that McCall bought for the joint benefit of himself and Broughton, under an agreement to divide the land between them. McCall represented to

Broughton, in 1863, that he had paid for the land, in Confederate money, at $20 per acre; and thereupon the written agreement between them was drawn up. But, afterwards, when it was ascertained that Confederate money had been refused, they treated the agreement between themselves as upon the original basis, and agreed to hold the lands until they acquired a title under the statute of limitations; and eac i so held his portion of the land for more than ten years. Upon these facts, McCall certainly can not recover on his original contract with Broughton as proved.

2. The written agreement between Broughton and McCall recites that McCall had no title to the land, and no obligation rested on him until he obtained title from Mitchell and Boyden; while Broughton executed no independent obligation for the purchase-money, no time was fixed for its payment, and the contract itself was retained by him. Broughton, then, was not bound to pay the purchase-money, until McCall had acquired the title, and tendered him a conveyance.—*Ledyard v. Manning*, 1 Ala 153; *McKleroy v. Tulane*, 34 Ala. 78. Broughton contracted for a conveyance from McCall and wife, and was not bound to accept a deed from Mitchell and Mrs. Boyden, if it had been tendered. If he was bound to pay the stipulated purchase-money, he was entitled to have such a conveyance as he contracted for; yet a decree for the purchase-money has been rendered against him, and the record shows that he has paid it, while the legal title is outstanding in non-residents, who are beyond the jurisdiction of the court.

3. Again, after it was ascertained that the Confederate money had been refused, McCall and Broughton, by mutual agreement, abandoned their written contract, and agreed that each should hold his portion of the land, and that Broughton should pay McCall, of whatever sum the latter might pay, a part in the proportion of 240 to 320; and afterwards, it was still further agreed, no claim having been preferred by the owners of the land, that they should still hold on, if possible, and acquire a title under the statute of limitations. No objection was made to this evidence, and none could have been sustained. It was competent for the parties thus to modify their written contract, and the modification was supported by a sufficient consideration.—1 Greenl. Ev. §§ 296 *a*, 304; *Young v. Fuller*, 29 Ala. 464. It necessarily follows that McCall had no right of action against Broughton when this bill was filed; and also, if he made any compromise or settlement with his vendors, by which his liability was discharged or released, Broughton was equally entitled to the benefit of it. If he had compromised by paying $5

per acre for the land, he could not have forced Broughton to pay a higher price; and he could not make any transfer which would change Broughton's liability to him, either in amount, or in time of payment.

4. The contract between McCall and Mitchell, as to the transfer of the claim on Broughton and the bringing of this suit, as disclosed by the evidence, was void for champerty and maintenance.—*Poe v. Davis,* 29 Ala. 676; *Harrington v. Long,* 2 Myl. & K. 560, or 8 Cond. Eng. Ch. 140; *Burke v. Greene,* 3 Ball & Beatty, 517.

5. There was certainly no right of recovery in Mrs. Boyden. She was not a party to the original contract made by Cox, and it was a nullity as to her rights; nor was she a party to the contract between McCall and Broughton; nor was she a party to the alleged transfer by McCall to Mitchell. Her interest in the lands gives her no right to intervene in any of these matters.

6. Under no aspect of the case, can Broughton be charged with interest, as the chancellor correctly held. If the contract bound him to pay the purchase-money, it also bound McCall to make him a valid conveyance within a reasonable time. During the period of over fourteen years, he has held himself ready to comply with his contract, so far as McCall was concerned; but, while the legal title was outstanding in others, the land was not available to him for sale, or as security, and he could only await McCall's action; while McCall did not move in the matter, because he was unwilling to pay the price he had agreed to pay Cox, because the land had greatly depreciated in value.

R. M. WILLIAMSON, *contra.*—1. By the terms of the written contract between Broughton and McCall, the former was bound to pay the stipulated purchase-money, $4,951.95, "on or before the 1st January, 1861;" while McCall was not bound to make him a conveyance, until he had procured a good and sufficient title from his vendors. Broughton got possession of the land under this contract, and he has retained it; and he can not, while thus retaining it, refuse to pay the purchase-money, or otherwise repudiate the contract.—*Cope v. Williams,* 4 Ala. 362.

No other valid contract was ever made between the parties. If the subsequent loose conversations between them, showing an intention or attempt to avoid the debt to Mitchell and yet keep the land, could be raised to the dignity of a contract for the sale of the land, such contract would be void under the statute of frauds.—*Stovall v. Robinson,* 3 Bing. N. R. 928; *Bell v. Howard,* 9 Mod. 302; *Smith v. Burnham,* 3 Sum. 435;

[Broughton v. Mitchell.]

Eq. Cas. Abr. 33; 5 Scott, 196; Browne on Stat. Frauds, §§ 409-28.

2. The liability for interest follows as an incident to the liability for the purchase-money, and the chancellor erred in not allowing it. The claim for interest is not inequitable, since nothing is shown in avoidance of it: on the contrary, Broughton has had the uninterrupted possession of the land, and has taken the rents and profits to his own use, for which interest is a just compensation. The delay in perfecting title was with his concurrence, and he can not complain of it, nor claim any advantage from it.—7 Ala. 217; 30 Ala. 227, 668; 22 Ala. 343; 25 Ala. 152; 23 Ala. 296; 19 Ala. 468.

BRICKELL, C. J.—Proceeding upon the general principle, that all persons materially interested, either legally or beneficially, in the subject-matter of suit, must be made parties, either as plaintiffs or defendants, when, in a court of equity, the cause or subject of controversy is a legal *chose in action* which has been assigned, the assignor, if the legal title remains in him, or if the assignment is not absolute and unconditional, or if its extent or validity is disputed, must be made a party, that he may be bound by the decree, and future litigation or a multiplicity of suits prevented.—1 Dan. Ch. Pr. 198; Story's Eq. Pl. § 153. In any case, he is a proper party, because of his connection with the subject-matter of suit, and the privity of contract existing between him and the assignee, and the party bound by the chose in action. With his consent, he may be joined as a complainant with the assignee, or, at the election of the latter, made a party defendant.—*Blevins v. Buck*, 26 Ala. 292; 1 Dan. Ch. Pr. 200; *Thompson v. McDonald*, 2 Dev. & Bat. Eq. 476; *Wilson v. Davidson*, 3 Tenn. Ch. 546. If the assignment is not admitted, proof of it is material to maintain the right of the assignee to relief; and when the assignor is joined as a complainant, the admission of record obviates the necessity of making proof of the assignment, or of any of the facts or circumstances which may have attended it.

The assignment may pass to the assignee the entire beneficial interest, entitling him to all the relief which is prayed, or the court may grant. The rule is of general application, as is insisted by the counsel for the appellant Broughton, that if there be several complainants in a bill, some of whom have an interest, and are entitled to sue, while others are without an interest, or are barred of all right to relief, the misjoinder is fatal. The rule is not applied, when assignor and assignee join as complainants; nor is it capable of application when, as in the present case, the legal title resides

[Broughton v. Mitchell.]

in the assignor, and there is a liability remaining on him, the decree may affect.—*Thompson v. McDonald, supra.* If Broughton is liable, on his contract with McCall, for the payment of the purchase-money, the decree rendered must be in favor of the assignees, his co-complainants; none can be rendered in favor of McCall, because of the assignment by which the beneficial interest passed from him. This, however, diminishes no right of Broughton. A satisfaction of the decree discharges his contract, and extinguishes the legal title and the equitable interests the assignment created. Nor can it be of any consequence to Broughton, whether Mrs. Boyden and Mitchell share equally or unequally in the purchase-money, or that it is decreed to them jointly. It is enough that he is fully discharged, and acquires the right and title of each of them, in and to the lands. They may well be left upon their own terms to adjust their respective rights to the money.

2. We do not suppose the assignment of McCall to Mitchell and Mrs. Boyden is tainted with champerty, or maintenance. It is *bona fide,* founded on a valuable consideration; and its validity is unaffected by the fact that the parties knew a suit would be necessary to fix the liability of Broughton. Independent, however, of that consideration, the assignment being admitted by assignor and assignee, and not depriving him of any defense, it was not for Broughton to inquire into its legality or illegality.—*McCausland v. Drake,* 3 Stew. 344; *Oliver v. Jones, MSS.;* *Agee v. Medlock,* 25 Ala. 281.

3. The contract between Broughton and McCall was made originally on the 5th day of November, 1860; and, as is recited in the writing, remained in parol until the 24th day of February, 1863, when the writing was executed. The writing is under seal, and is inartificially drawn; but an express recital, not qualified by any other recital or stipulation, is that the purchase-money of the lands was *four thousand nine hundred and fifty-one 95-100 dollars, due and payable on or before the first day of January, 1861.* The writing then recites, as its condition, that McCall and wife are to make Broughton a good and sufficient title to the lands, when they obtain title in pursuance of the contract entered into between McCall and Boyden and Mitchell. We concur with the counsel for Broughton, that, under the present bill, it is essential that the recovery should be on the contract made between Broughton and McCall, and not upon any independent right or equity which Mrs. Boyden and Mitchell could enforce against Broughton, or against the lands he purchased from McCall. The whole scope of the bill is, that Broughton

was indebted to McCall, for the purchase-money of the lands, by a contract which was broken before and at the time of the filing of the bill, and that by assignment from McCall Mitchell and Mrs. Boyden had succeeded to McCall's rights under the contract. The rights of Mrs. Boyden and Mitchell are identical with, no greater or less than, the rights of McCall.

If, by the terms of the contract, the making of the title to Broughton, and the payment by him of the purchase-money, were to be simultaneous, it must be admitted, that McCall could not maintain any suit at law, or in equity, upon the contract, unless he had performed, or was in readiness to perform, his part of the contract; and, according to some authorities, have given Broughton notice of his ability and readiness to perform, demanding performance from him. But is this the character of the contract into which the parties entered? The inquiry must be answered from the writing, and from that only, so far as it is clear and unambiguous in its terms : that is the sole expositor, the only criterion, of the intention of the parties.—1 Chit. Con. 140–141. For more than a year, these parties permitted this contract to remain in parol, and then deliberately reduced it to writing, joining in its execution, and calling witnesses to attest it. No fraud, nor mistake, is imputed to either the one or the other, in the drawing or execution of the writing; and the conclusive legal presumption attaches, that all previous verbal stipulations are merged in the writing; or, if these are inconsistent with the writing, that they were intended to be superseded by the stipulations found in the writing.—1 Brick. Dig. 865, §§ 866–870.

4. Whether performance by McCall of the contract on his part—the making of a good and sufficient title of the lands to Broughton—was a condition precedent to the right of the former to demand of the latter payment of the purchase-money; or whether the making of title, and the payment of the purchase-money, were intended to be contemporaneous, is the important question of the case. The question depends on the meaning and intention of the parties, as expressed in the writing. A single instrument in writing may contain several, separate, independent covenants, promises, or agreements. The breach of one may furnish the party to whom it is made a cause of action against the promisor or covenantor, though there are covenants or promises he is bound to perform, and which he has not performed. This is true, whenever the consideration of the covenant or promise, which is the subject of suit, *is the promise, the obligation to perform,* and not the *performance* of the other covenant or promise.

2 Chit. Con. 1082.   But, if the performance of each covenant or promise is intended to be simultaneous, or concurrent, or a condition precedent to the performance of the other, performance, or a readiness to perform, or the hindrance of performance by the other party, must be shown, to entitle either to claim performance from the other.—*Jones v. Somerville,* 1 Port. 437.

Whether promises or covenants are dependent or independent—whether performance, or readiness to perform, upon either side, must be concurrent, or is a condition precedent to the right of the other to enforce performance—is a question of frequent occurrence, and has been the matter of much discussion.   There are rules recognized as useful, and applied in determining the intention of the parties— whether they intended the covenants or promises should be dependent or independent.   One of these, laid down by Sergeant Williams in his note to *Portage v. Cole* (1 Wm. Saund. 481), is, that "if a day be appointed for payment of money, or part of it, or for doing any other act, and the day is to happen, or *may* happen, before the thing which is the consideration of the money, or other act, is to be performed; an action may be brought for the money, or for not doing such other act, before performance; for it appears that the party relied upon his *remedy*, and did not intend to make the *performance* a condition precedent; and so it is where *no time* is fixed for the performance of that which is the consideration of the money or other act."   An example of the application of the rule is given in the note : " where articles of agreement were made between A. and B., and a covenant by A. that, for the consideration thereafter expressed, he should convey certain lands to B. in fee ; and B., on his part, for the consideration aforesaid, covenanted to pay a sum of money to A.; it was held, that these were independent covenants, and A. might bring an action for the money before any conveyance of the lands."   This rule has been often recognized, and made the basis of decision in this court —*Jones v. Somerville, supra; Ledyard v. Manning,* 1 Ala. 153 ; *Whitehurst v. Boyd,* 8 Ala. 375 ; *McKleroy v. Tulane,* 34 Ala. 78.

An application of the rule to this contract, renders it certain that the payment of the purchase-money by Broughton was intended to precede, and was not dependent upon, the making of titles to him by McCall.   A day certain—the first of January, 1861—is fixed for the payment of the purchase-money.   No time is fixed for the making of titles—McCall is to make them, when, under the contract with his vendors, referred to in this contract, he shall have obtained them. Under that contract, McCall could not obtain title until he

paid to his vendors the purchase-money in full; and such payment he promised, and was bound to make, on the first day of January, 1862, twelve months after the time Broughton bound himself to pay McCall the purchase-money. It is apparent from the contract itself, that the parties could not have contemplated that Broughton's promise to pay the purchase-money was dependent on making title to him. The day of payment, they knew, would precede the time when McCall would be able and ready to make title, and the day when Broughton could by right demand it. The case is, then, the one of very ordinary occurrence in this court, in which the vendee of lands, who has made an independent promise for the payment of the purchase-money, has been compelled to comply, though title has not been made to him.

6. We do not inquire what decree should have been rendered, under appropriate pleading, as to compelling a compliance by McCall with his covenant to make title, if Broughton had tendered performance on his part. He was in possession of the lands, and could not resist the payment of the purchase-money because of his vendor's failure or inability to make title. A cross-bill would have been the appropriate mode of obtaining title, if it had been desired, in performance of McCall's covenant. There is no question that the title resides in the complainants, and when satisfaction of the decree for the purchase-money is made, they will probably be estopped from asserting it against Broughton.

7. Interest attaches, as matter of right, to a contract for the payment of money, from the day on which it becomes due. It is given by the statute, as a compensation for the detention of the money; and neither courts of law, nor of equity, have any discretion in its allowance. The chancellor erred in not computing interest on the purchase-money due from Broughton, from the first day of January, 1861, when it was payable. The agreed purchase-money in this case was $4,951.95, due and drawing interest from January 1st, 1861. The present bill was filed May 27th, 1874, thirteen years, four months, and twenty-nine days after the maturity of the debt. The chancellor, in his decree, adjudged that there was due to complainants the principal of the purchase-money, $4,951.95, and interest on that sum from the filing of the bill; making, of principal and interest, the sum of $5,5_9.65. This sum, with some small interest upon it, accrued after decree, the record informs us the defendant paid. The principal of the debt, and the interest which accrued on it after the bill was filed, has thus been paid, leaving unpaid the interest which accrued before the bill was

[The State v. Seawell.]

filed. By calculation it is shown, that the sum of that interest was $5,313 when the present bill was filed. That sum the chancellor erroneously failed to award to the complainant, as part and parcel of the purchase-money due him. But it was interest, not principal, which the complainant failed to recover. We do not feel justified in applying the doctrine of rests to the payment made by Broughton under the chancellor's decree. We regard it as payment of the principal, and partial payment of the interest. Interest does not draw interest, and it follows that the amount of the purchase-money due and unpaid, is the sum of the interest which had accrued when this suit was brought, without interest thereon up to the present time.

The result is, the decree on the appeal taken by Broughton must be affirmed. On the appeal taken by Mitchell and others, the decree must be reversed, and a decree here rendered in accordance with this opinion.