# McKenzie & Morton *v.* Wimberly.

*Action on Promissory Note, by Assignee against Makers.*

1. *Parol evidence explaining ambiguous terms in writing.*—In an action on a promissory note given in part payment for the standing timber on a tract of land, described in the written contract of sale as "all the pine timber *twelve inches heart and up*," parol evidence is admissible to show the meaning of the italicized words.

2. *Plea attacking consideration of note.*—In an action by the assignee

[McKenzie & Morton v. Wimberly.]

against the makers of a non-negotiable promissory note, which was given on the purchase by the makers of the standing timber on a tract of land, if they obtained all the timber to which they were entitled, they can not defend against the note on the ground that the land belonged to the payee's wife, who did not join in the sale.

APPEAL from the Circuit Court of Butler.

Tried before the Hon. JOHN P. HUBBARD.

This action was brought by M. Wimberly against McKenzie & Morton as partners, and was commenced in a justice's court. The cause of action was the defendants' promissory note for $48.90, which was dated February 7th, 1883, and payable on the 30th of the same month, to W. J. Nicholson, by whom it was transferred to the plaintiff. The note was not produced on the trial, but affidavit of its loss was made. In the Circuit Court, on appeal, the defendants pleaded (1) the general issue, (2) failure of consideration, and (3) want of consideration; and issue was joined on these several pleas. On the trial, as the bill of exceptions shows, it was proved that the note was given on a sale of timber by said Nicholson to the defendants, and was executed contemporaneously with the written contract of which it formed a part. This written contract was signed by said Nicholson, and in these words: "Know all men by these presents, that I, W. J. Nicholson, in consideration of the sum of $180 to me in hand paid ($131.10 in cash, and $48.90 by note due Feb. 20, 1883) by McKenzie & Morton, do hereby grant, sell and convey to them, their heirs or assigns, all the pine timber, 12 inches heart and up, on 120 acres of land in section 6, township 7, range 13; said timber having been surveyed out by W. Crenshaw, Feb. 3, 1883. I hereby sell and convey said timber to said McKenzie & Morton free from any incumbrance whatever. This February 7th, 1883."

"The defendants offered evidence tending to show that they commenced to cut the timber mentioned in the contract, and were cutting some time in July, when said Nicholson notified them that they must not cut any more timber on said land; that the land belonged to his wife, and was her separate estate, and that she would proceed against them for trespass, if they cut any more timber on it; and defendants thereupon ceased to cut timber, and never cut any more from said land. The evidence for the defendants tended to show, also, that there was still standing on said land, at the time such notification was given to them, pine timber, 12 inches heart and up, if the contract was construed as they

[McKenzie & Morton v. Wimberly.]

insisted it should be, to the amount of more than one hundred thousand feet, worth from seventy-five cents to one dollar per thousand. Evidence was given as to the meaning of 12 inches heart and up, as mentioned in said contract; some of which tended to show that it meant 12 inches heart where the tree was cut off at the stump, as defendants insisted; and some that it meant 12 inches heart where the log was cut off from the tree, as the plaintiff insisted. If the plaintiff's construction was correct, all the trees of that measurement had been taken from the land, and used by the defendants, before said notification was given; but, if defendants' contention was correct, then all had not been cut; and that this difference in the construction and meaning of the contract caused the objection to cutting any more trees."

On this evidence, the defendants requested the following charges in writing, duly excepting to their refusal: (1.) "If the jury believe from the evidence that W. J. Nicholson made said contract, and that it was for the sale of timber on his wife's land; then said contract is void, the note sued on is without consideration, and their verdict should be for the defendants." (2.) "Nicholson could not make a valid sale of the timber on his wife's land; and if the note sued on was given in part payment for timber sold by the husband on the wife's land, and he transferred it without the wife joining in such conveyance, then plaintiffs can not recover on said note." (3.) "If the jury believe from the evidence that the note was given for the timber trees on the piece of land mentioned in said contract, and for nothing else; and that the ordinary and usual mode of measurement, in the purchase of standing trees, is the measurement at the stump; and that there was more than $48.90 worth of timber trees standing on the land, 12 inches heart at the stump; and that defendants were prevented from cutting this timber by the warning and objection of said Nicholson, and none of said timber was cut after notice of the transfer; then the consideration of the note has failed, and their verdicts should be for the defendants."

The refusal of each of these charges is assigned as error.

JOHN GAMBLE, and J. C. RICHARDSON, for appellant, cited *Cooper v. Watson*, 73 Ala. 252.

No counsel appeared for the appellee.

STONE, C. J.—The written contract evidences a sale by Nicholson to McKenzie & Morton, of certain timbers standing on 120 acres of land, described in the writing. The sale was an implied authority to enter and remove the timber within a reasonable time. The contract describes the timber sold as "all the pine timber 12 inches heart and up." There was contention in the court below as to the meaning of the phrase "12 inches heart and up"; and testimony was properly admitted as to its meaning.—3 Brick. Dig. 291, § 2; *Wilkinson v. Williamson*, 76 Ala. 163. This controversy raised the question of the proper rule for the measurement of the timber.

The suit was on the note given in part purchase of the timber, and the defense was failure of consideration to a greater extent than the amount of the note. If the contention of McKenzie & Morton was correct, then they were forbidden and prevented from further removing the timber, when there remained upon the tract timber they had purchased of greater value than the amount of the note. If the contention of Nicholson and his transferree, Wimberly, was the true rule of measurement, then McKenzie & Morton had obtained all the timber they purchased, and they were not entitled to remove any more timber. The testimony tends to show that McKenzie & Morton were stopped in getting timber in July, 1883. The note sued on was due in February, and was traded to Wimberly in September—all in 1883. The note is non-negotiable.

The testimony tended to show that the land, the timber on which was contracted to be sold, was the statutory separate estate of Nicholson's wife. She did not join in the sale.

The testimony is agreed as to the fact, that Nicholson forbade McKenzie & Morton cutting and removing other timber, but the witnesses differ as to the reason he gave. Nicholson's version was, that they had obtained all the timber they were entitled to under their purchase, and on that account he stopped them. Their testimony tended to show that he informed them the land belonged to his wife, and that she would sue them if they trespassed further upon it. Thereupon they ceased, and never afterwards cut any timber from the land.

As we have shown, the real question in issue was the proper rule of measurement; and upon that question the testimony was in conflict. It thus became a question for

[Hambrick v. Russell.]

the jury.   Charge three asked by defendants ought to have been given.

Charges 1 and 2 were properly refused.   If McKenzie & Morton had obtained all the timber they were entitled to under the contract, they were in no condition to defend against the note.—*McCausland v. Drake*, 3 Stew. 344; 1 Brick. Dig. 383, §§ 119, 120.

Reversed and remanded.