(92 South. 171)

**HODGE et al. v. JOY et al.　(7 Div. 210.)**

(Supreme Court of Alabama.　Nov. 10, 1921. Rehearing Denied Feb. 2, 1922.)

1. **Appeal and error ⬥931(1)—Presumption favors findings in equity only if testimony was taken before the judge rendering the decree.**

The rule at law, as to presumptions on appeal in favor of findings applies, under Acts 1915, p. 705, in chancery cases in which the testimony was taken orally in court only where the testimony was taken before the judge who rendered the decree; and, if it was taken before another judge, the reason for the rule, and the rule itself, fail, and the questions of fact are, under Code 1907, § 5955, subd. 1, tried de novo on appeal, unaided by the presumption.

2. **Evidence ⬥52—Pleading ⬥6—Facts judicially known need not be pleaded or proved.**

Facts of which the court takes judicial knowledge are not required to be pleaded or proved.

3. **Evidence ⬥44—Supreme Court takes judicial knowledge judge who rendered decree was not presiding in circuit court when testimony was taken.**

Where the record on appeal in an equity suit shows the date on which the testimony was taken in open court, the Supreme Court can take judicial knowledge that the judge who rendered the decree was not the presiding judge of the circuit court at the time the testimony was taken.

4. **Evidence ⬥51—Court can resort to sources of specific information for verification of facts of which it takes knowledge.**

The Supreme Court has the right of recourse to all sources of specific information for the verification of a fact of which the court takes judicial knowledge.

5. **Chattel mortgages ⬥104—Bill of sale and chattel mortgage to secure purchase price will be construed together.**

In a suit to have a trust declared in the lease and fixtures of a hotel, a bill of sale and transfer of the lease to the respondent and a chattel mortgage given by respondent to secure the payment of the balance due on the purchase price will be construed together.

6. **Courts ⬥106—Detailed discussion of evidence will not be undertaken.**

Under Acts 1915, pp. 594, 595, § 3, providing that the Supreme Court need not render an opinion on issues of fact, it is no longer the policy of the Supreme Court to undertake a detailed discussion of the evidence, leading to its conclusions of fact, but it will simply announce its conclusions.

7. **Wills ⬥302(8)—Contents of lost will may be proved by one witness.**

Where the evidence showed the due execution of a will which had since been lost, the contents of the lost instrument may be proved by one witness, though the statute requires two subscribing witnesses to make it a valid will.

8. **Wills ⬥290—Proof of execution of will imposes on party denying its existence burden of proving revocation.**

Proof of the due execution of a will which has since been lost imposes upon the party denying the existence of the will the burden of showing a revocation in the manner required by Code 1907, § 6174.

9. **Descent and distribution ⬥82—Family settlements of disputes as to property are favored.**

It is the policy of the law to encourage and facilitate amicable adjustment by families of disputes as to their interests in common property or the division of such property according to the agreement of all parties in interest.

10. **Wills ⬥740(4)—Written agreement of settlement extinguished rights under a will.**

Where the two children of a decedent claimed their mother had executed a will giving her property to her husband and two children, share and share alike, which the husband denied and claimed a half of the property under the intestate laws, a written agreement be-

tween the husband and the two children, settling the dispute and giving the husband an undivided one-half interest and each of the children an undivided one-quarter interest in the property, extinguished the rights of the children under the will.

**11. Wills ⬤⟿740(3)—Relinquishment of claim to larger share is consideration for recognition of claim to smaller share.**

A relinquishment by two children of their claim to an undivided one-third interest in their mother's property under a lost will is sufficient consideration for an agreement between them and their father whereby they were to receive an undivided one-fourth interest in the property.

**12. Contracts ⬤⟿88—Consideration presumed for written instrument not duly challenged.**

Where the written agreement of settlement between the parties on which the suit was founded was not impeached by a plea, it is presumed the instrument was founded on sufficient consideration under Code 1907, §§ 3966, 5324, 5332.

**13. Trusts ⬤⟿30½(2)—Agreement signed by holder of legal title recognizing share of others gives them equitable interest.**

An agreement of settlement entered into between the holder of the legal title to property and his children, in which the right of the children to a share of the property was recognized, but which was unaccompanied by any transfer of legal title to such share, gives the children the equitable title to the interests therein recognized as belonging to them.

**14. Trusts ⬤⟿366(1)—Beneficiaries are necessary parties to bill to establish their interest.**

Equity regards beneficiaries of a trust as necessary parties to a bill for the establishment of their respective equitable interests.

**15. Compromise and settlement ⬤⟿23(3)—Evidence held to show delivery of settlement contract.**

In a suit to establish a trust founded on a written agreement in which the holder of the legal title to property recognized the interests of complainants in the property, evidence that the holder of the legal title and his attorney wrote letters to complainants after the execution of the agreement, recognizing its validity, *held* sufficient to show that the agreement had been delivered.

**16. Trusts ⬤⟿21(1)—Settlement contract held sufficient memorandum of trust.**

A written agreement between a father and his two children, specifying the interests of each party as heirs of their wife and mother in a lease taken in the name of the father, though shown by the evidence to have been the property of the mother, which acknowledged the mother's ownership at her death, designated the property with certainty, and specified the interests of each party, was a sufficient memorandum, declaring a trust in favor of the children, to satisfy the requirements of Code 1907, § 3412.

**17. Trusts ⬤⟿25(1)—No particular form of words necessary to create.**

To create a trust no particular form of words is required, but any instrument in writing, signed by the party to be charged, manifesting the nature, subject-matter, and objects of the trust with reasonable certainty, is sufficient.

**18. Trusts ⬤⟿22—Declaration need not be contemporaneous with acquisition of legal title.**

It is not necessary that the writing declaring a trust be executed contemporaneously with the transfer of the legal title and the creation of the trust, but it is sufficient if executed subsequently thereto.

**19. Landlord and tenant ⬤⟿94(3)—Notice to make repairs is not notice of forfeiture.**

Where the lease provided that in case of default by the lessee the lessor might at its option terminate the lease on 30 days' notice in writing, the lease was not forfeited, even though the lessee had given grounds for forfeiture, where the only notice given by the lessor was a list of desired improvements to the property.

**20. Landlord and tenant ⬤⟿112(1)—Conditions in lease as to forfeiture may be waived by party beneficially interested.**

Conditions in a lease as to forfeiture may be waived by the party beneficially interested therein.

**21. Forfeitures ⬤⟿1—Equity abhors forfeitures.**

Equity abhors forfeiture, balances the consequences to the parties, and seizes upon slight circumstances to declare a waiver of forfeiture.

**22. Descent and distribution ⬤⟿90(1)—Distributees held entitled to maintain suit for fraud of administrator.**

Where there were no debts so there was no necessity for an administration except to distribute the property, the distributees are entitled to maintain a suit to redress fraud and collusion by the administrator in selling property of the estate for his own benefit after demand upon him that he rescind the sale and his refusal to do so.

**23. Appeal and error ⬤⟿1036(3)—Failure to make administrator party held not prejudicial.**

Where the administrator was made a respondent in his individual capacity in a suit to rescind a sale by him in fraud of the rights of distributees, and the bill alleged that he was such administrator, that there were no debts of the estate, and the time for proving debts against it had elapsed, and the respondents did not attack the bill for nonjoinder of the administrator in his official capacity, but alleged that the individual joined as respondent and the administrator were the same, there was no prejudicial error in rendering final decree for complainants without requiring the joinder of the administrator in his official capacity.

---

⬤⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**24. Equity 94—All persons having material interest in subject-matter must be made parties.**

All persons having material interests in the subject-matter of a suit must be made parties to a bill on the principal that no man's rights should be controverted · in a court of justice until he has full opportunity to appear and vindicate them, and to the end that complete justice may be done and future litigation avoided.

**25. Equity 94—Indispensable parties must have interest necessarily affected by the decree.**

To be a necessary and indispensable party to a bill in equity in whose absence the court will not proceed to a final decree, one must have a material interest in the issue which will be necessarily affected by the decree.

**26. Equity 94—Persons having legal title to subject-matter must be made parties.**

All persons holding the legal title to the subject-matter of the litigation must be made parties to a bill, such as a mortgagee who assigned the secured chose in action, but not the mortgage, or a vendor who transferred a purchase-money note by delivery, and not by due assignment.

**27. Equity 94—Necessary parties to bill for distribution, partition, or settlement of estates include joint owners, distributees, and next of kin.**

The rule that the whole title to the subject-matter of the suit should be before the court requires joint owners, distributees, and next of kin to be made parties to bills for distribution, division, or partition, or to compel the administration and settlement of the estate.

**28. Equity 94—Holder of superior title not questioned by bill is not necessary party.**

The whole title is not required to be brought before the court in suits in equity, where prior or superior interests or claims upon the title are not affected by the suit or decree to be rendered, and their validity and priority are not disputed.

**29. Equity 117—Lessor, mortgagee, and chattel mortgagee held not necessary parties to bill to establish trust against lessee and mortgagor for whose absence court will deny relief ex mero motu.**

In a suit to establish a trust in a hotel lease and the equipment thereof, where no attack was made on the validity of the lease or the validity or priority of a mortgage given by the lessor or of a chattel mortgage given by the lessee on the hotel equipment, the lessor, mortgagee, and chattel mortgagee, were not indispensable parties for whose absence the court ex mero motu will deny a decree· for complainants.

Appeal from Circuit Court, Calhoun County; A. P. Agee, Judge.

Bill by Ethel Clifford Joy and J. A. Clifford, as heirs at law of Mrs. Annie Clifford, against H. L. Hodge and Michael Clifford, to establish and enforce the execution of a parol trust in certain property, or to have declared a resulting trust in their favor. From the decree granting the relief prayed, respondents appeal. Affirmed.

Ross Blackmon, of Anniston, J. J. Mayfield, of Montgomery, and Rutherford Lapsley and J. B. Holman, Jr., both of Anniston, for appellants.

The court erred in decreeing complainants each owned an undivided one-fourth equitable interest in and to the leasehold and the personal property mentioned. Section 3412, Code 1907; 111 Ala. 658, 20 South. 594; 62 Ala. 529, 34 Am. Rep. 35; 117 Ala. 423, 23 South. 534. There can be no resulting trust under the proof in this case. 152 Ala. 354, 44 South. 579; 136 Ala. 514, 33 South. 895: 195 Ala. 540, 70 South. 670; 197 Ala. 111, 72 South. 347, L. R. A. 1916F, 1024: 3 Pomeroy, Equity, § 1008; 195 Ala. 600, 71 South. 180. The administrator cannot carry on the business of operating a hotel. 124 Ala. 379, 27 South. 258; 86 Ala. 343, 5 South. 571. There was an absence of the necessary parties respondent. 64 Ala. 220.

Knox, Acker, Sterne & Liles, of Anniston, for appellees.

Complainants are entitled to recover under the instrument of January 29, 1917. Even though there had been no equitable ownership in Mrs. Clifford, and no trust obligation resting upon Mr. Clifford, and even if this is not so respondents have waived their right to invoke the statute of frauds by failing to properly read it. 127 Ala. 52, 28 South. 376: 152 Ala. 594, 44 South. 863; 102 Ala. 342, 14 South. 650; 26 N. J. Eq. 484; 96 Ala. 130, 11 South. 387; 79 Ala. 356; 127 Ala. 621, 29 South. 96; 20 Cyc. 315. No particular formality is requisite or necessary in the creation of the trust. The resulting trust was clearly observed. All the necessary parties were made parties respondent, or, if not, it had been waived. 124 Ala. 122, 27 South. 499; 117 Ala. 612, 23 South. 651. 9 R. C. L. 117. There was no forfeiture shown.

THOMAS, J. The final decree is dated January 7, 1921; notes of testimony on submission are of date December 16, 1920, and the date of closing the taking of testimony in open court April 29, 1920. The complainants' note of testimony embraced the testimony of the witnesses named, and recited to have been "taken in open court"; that of respondents was upon depositions of the witnesses indicated. Appellant has transmitted to the clerk of this court stenographic notes purported to have been filed in the circuit court July 28, 1920, by the official reporter, for the purpose of reference to ascertain who was the presiding judge at the

---

For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

taking of the testimony on which the submission was had.

[1] We need only refer to and consider the record proper and pertinent facts of which the court takes judicial knowledge to ascertain whether a material part of this testimony was "taken in open court" before the judge who rendered the final decree. It was to testimony voluntarily taken in open court ore tenus by the parties that the rule of presumption was given application in chancery cases. Brassell v. Brassell, 205 Ala. 201, 87 South. 347; McSwean v. McSwean, 204 Ala. 663, 86 South. 646; Ray v. Watkins, 203 Ala. 683, 85 South. 25; Andrews v. Grey, 199 Ala. 152, 74 South. 62. This action of the parties in so taking the testimony was the reason for application in chancery cases of the rule at law (Hackett v. Cash, 196 Ala. 403, 72 South. 52; Acts 1915, p. 705), notwithstanding section 5955, subd. 1, of the Code and the right or provisions of the statute for taking evidence by deposition. It is held that, not having taken testimony ore tenus in open court on any issue of fact, the rule of the statute, section 5955, subd. 1, is imperative as a declared legislative intent (Johnston v. Fondren, 204 Ala. 656, 87 South. 94; Freeman v. Blount, 172 Ala. 655, 659, 660, 55 South. 293; Claflin v. Muscogee Mfg. Co., 127 Ala. 376, 383, 384, 30 South. 555; Woodrow v. Hawving, 105 Ala. 240, 246, 16 South. 720; McWilliams v. Phillips, 71 Ala. 80). Having waived or been deprived of the right to a review without presumption in this court, by the taking of testimony ore tenus in open court as to one presiding judge, appellants' right under the statute could not be said to have been so affected by taking testimony ore tenus in open court before a different judge (not presiding when the testimony was so taken) rendering the final decree in the case. As long as the reason for a rule exists, so long does that rule prevail; when the reason ceases, the rule fails. Betts v. Ward, 196 Ala. 248, 72 South. 110; Bank of Montg. v. Plannett's Adm'r, 37 Ala. 222. See, also, L. & N. v. Abernathy, 197 Ala. 512, 533, 73 South. 103.

[2] The record and facts of which the court takes judicial knowledge are sufficient, since facts judicially known are not required to be pleaded or proved. Moon v. Hines, 205 Ala. 355, 87 South. 603, 605, 13 A. L. R. 1020. Facts of judicial knowledge are held to be those concerning the various commissioned officers of the state and the extent of their authority (Casey v. Bryce, 173 Ala. 129, 55 South. 810; Cary v. State, 76 Ala. 78; Miller v. McMillan, 4 Ala. 527; Ingram v. State, 27 Ala. 17); the expiration of their terms of office (Ragland v. Wynn's Adm'r, 37 Ala. 32; Coleman v. State, 63 Ala. 93); the terms of the circuit courts (Lindsay v. Williams, 17 Ala. 229; Rodgers v. State, 50 Ala. 102); and that the court convened on a certain day

(McMullan v. Long [Ala.] 39 South. 777); tables of mortality (Gordon v. Tweedy, 74 Ala. 232, 49 Am. Rep. 813); the extended development of the iron industry in the state, etc. (Clifton Iron Co. v. Dye, 87 Ala. 468, 6 South. 192); general panics and financial disturbances and their general effect on the value of property (L. & N. v. Holland, 173 Ala. 675, 690, 55 South. 1001; Randle v. Winona Coal Co. [Ala. Sup.] 89 South. 790 [1]); such facts as the Acts of Congress and general orders of the departments of government (M. J. & K. C. v. Bromberg, 141 Ala. 258, 282, 37 South. 395; Webb v. White Eng. Corp., 204 Ala. 429, 85 South. 729; Moon v. Hines, supra); and the Governor's proclamation convening the Legislature. (Ensley v. Simpson, 166 Ala. 366, 383, 52 South. 61.)

[3, 4] By the analogy of the foregoing decisions this court judicially knows that when the testimony was taken by consent of the instant parties in open court anterior to and on April 29, 1920, Judge Merrill was presiding judge of the circuit embracing Calhoun county; and the court further has judicial knowledge of the fact that Judge A. P. Agee, rendering the final decree, was not a presiding judge of the circuit court in this state on or before the dates on which the transcript shows the evidence in question was taken. The fact that Judge Merrill was presiding when a portion of the testimony was taken ore tenus in open court is shown by two questions propounded to witness by appellees, referring to or using Judge Merrill's name as the judge then presiding. It is unnecessary to remark that we have the right of recourse to all sources of specific information for verification of a fact of which the court takes judicial knowledge. 1 Greenl. Ev. (14th Ed.), § 6; 23 Cor. Jur. § 2001, p. 169. In Gordon v. Tweedy, supra, it was said:

"It is customary for courts to take judicial knowledge of what ought to be generally known within the limits of their jurisdiction. This cognizance may extend far beyond the actual knowledge, or even the memory of judges, who may therefore resort to such documents of reference, or other authoritative sources of information as may be at hand, and may be deemed worthy of confidence. The rule has been held, in many instances, to embrace information derived informally by inquiry from experts." 74 Ala. 237, 49 Am. Rep. 813.

That we do not give application in this case to the rule of Brassell v. Brassell, supra, and other cases cited, is not by reason of an examination of the stenographic notes transmitted to the clerk of this court, but from the intrinsic evidence contained in the transcript and the foregoing fact, of which judicial knowledge is taken.

We are thus brought to a consideration of the evidence under the rule of section 5955,

---

[1] 206 Ala. 254.

subdivision 1, of the Code, requiring this court to weigh the evidence and be not influenced by the decision of the trial court upon the facts; to try the same de novo without presumptions in favor of the findings of fact by the circuit court. Johnston v. Fondren, supra; Porter v. Henderson, 204 Ala. 564, 86 South. 531.

[5] A shorthand rendition of the history of ownership and proprietorship of the Alabama Hotel in Anniston, Ala., by and previous to that of M. Clifford is that the same is owned by the Anniston Hotel Company, a corporation, which had leased the property to Scoville, Stubbs & Keen, with certain personal properties therein—"furniture and fixtures used by Scoville, Stubbs & Keen." That tenancy having terminated, on October 13, 1909, the owner leased the same to Frank G. Warden of Newark, Ohio, who went into possession and operated the property for a term to extend to January 1, 1915; and on January 29, 1913, said landlord extended the lease with said Warden to December 31, 1922, upon the terms and conditions set forth embracing paragraph 8, infra, providing for forfeiture on default in manner indicated. On February 1, 1913, said Warden subleased to the Alabama Hotel Company, a corporation, which went into possession of the property and operated it until March 17, 1914, when that corporation duly executed a bill of sale to the furniture and fixtures contained in the hotel to M. Clifford, said instrument reciting as a consideration the sum of $30,000, $8,000 paid in cash and 7 notes aggregating $22,000, of which it is recited that the same are "secured by mortgage this day given to F. G. Warden, as trustee for the Alabama Hotel Company, a corporation." On the same day (March 17, 1914) said corporation duly executed to said Clifford a transfer of its lease to the hotel, reciting a consideration of $1 and other valuable considerations paid by said Clifford, and assigned unto him "all its interest in and to a certain lease on the hotel building known as the Alabama Hotel, situated on the northwest corner of Noble and Twelfth streets in the city of Anniston, Ala., with lands and appurtenances thereto," and further reciting that—

"Michael Clifford on his part assumes said lease and * * * assumes all the obligations imposed upon the * * * 'Alabama Hotel Company in and by said lease from F. G. Warden to * * * Alabama Hotel Company."

And on the same day the consideration of said written instruments was given further expression by Clifford's chattel mortgage to "F. G. Warden trustee for the use and benefit of the Alabama Hotel Company," reciting the indebtedness of $22,000, evidenced by the seven promissory notes due, respectively, March 17, 1915, 1916, 1917, 1918, 1919, 1920,

and 1921; and to secure the payment of said notes, granted, bargained, sold, and conveyed unto F. G. Warden as trustee for the use and benefit of the Alabama Hotel Company "all the furniture and fixtures now contained in the Alabama Hotel in Anniston, Ala., and used in the operation of the same, and formerly used by Scoville, Stubbs & Keen, and now by the Alabama Hotel Company," particularly describing it in manner indicated in foregoing bill of sale to personal property from Alabama Hotel Company, a corporation, to Michael Clifford. Such chattel mortgage further recites in its body that F. G. Warden was acting as trustee as aforesaid, and that in event of the sale of said property under the mortgage, as such trustee he was authorized and empowered to purchase and to execute title thereto, etc. These instruments will be construed together. Randolph v. Bradford, 204 Ala. 378, 86 South. 39.

No allegation or prayer of the bill questioned or challenged the right of Frank G. Warden, the Alabama Hotel Company, a corporation, or F. G. Warden as trustee of the Alabama Hotel Company, as lessors or as the mortgagees named in the chattel mortgage of March 17, 1914, but only the right of the landlord, the Anniston Hotel Company, to declare its lease of the property and that of M. Clifford as sublessee thereunder forfeited by reason of a provision contained in the original lease, and challenged the right, title, and interest of Michael Clifford to make a lease or sale of this property to Hodge, and prayed for an accounting.

[6] The evidence in this case is voluminous, embracing several hundred pages of the transcript. No good purpose would be subserved by a detailed discussion of questions of fact only. It is within the reason of the statute that we "simply announce our conclusion," which "is in accord with the present policy in dealing with questions of fact." Acts 1915, pp. 594, 595, § 3; Underwood v. Underwood, 200 Ala. 690, 77 South. 233; Farley v. Baldwin, 201 Ala. 197, 77 South. 723; Profile Cotton Mills v. Calhoun Water Co., 201 Ala. 483, 78 South. 389; Alabama Veneer Co. v. Richardson, 201 Ala. 698, 78 South. 987; King v. State, 205 Ala. 698, 88 South. 922. After a careful consideration of the evidence, we have no doubt that the subject of controversy was the property of Mrs. Annie Clifford at the time of her death, and was not that of her husband or son, whom she employed or used in the conduct of her business; that this ownership by her was known and understood by those with whom she dealt, and, as for that, by the general business public; and that she was the dominant and responsible party in interest at the time of her death.

[7, 8] The evidence further shows that she duly executed a last will and testament, making distribution of her properties to her

husband, son, and daughter, share and share alike. Such were her declarations. McBeth v. McBeth, 11 Ala. 596, 603; Law v. Law, 83 Ala. 432, 3 South. 752; Weeks v. McBeth, 14 Ala. 474; Venable v. Venable, 165 Ala. 621, 51 South. 833; 28 R. C. L. pp. 170, 383, 384. The evidence fails to show a revocation of that will as required by law. Code, § 6174; Slaughter v. Stephens, 81 Ala. 418, 2 South. 145; Woodruff v. Hundley, 127 Ala. 640, 29 South. 98, 85 Am. St. Rep. 145; Allen v. Scruggs, 190 Ala. 654, 67 South. 301. Just before undergoing a serious operation, she gave it to one of her employees. The subsequent disposition of the will or failure of its delivery to the executrix named or to her children is not satisfactorily explained. The contents of such a lost testamentary instrument may be proved by one witness, although the statute requires two subscribing witnesses thereto to make it a valid will. Skeggs v. Horton, 82 Ala. 352, 2 South. 110; Jaques v. Horton, 76 Ala. 238; Allen v. Scruggs, 190 Ala. 654, 667, 67 South. 301. When the execution of a will is proved, the burden passes to the one who denies its existence to show a due revocation. After the death of Mrs. Clifford the will was not found among her personal effects or in the office of the hotel, was not in the possession of her children or said employees. Under such circumstances, it was but natural that discussion should arise between the heirs at law of Annie Clifford, deceased, as to the ownership of her properties, the conduct of the Alabama Hotel, and the extent of the respective interests in decedent's properties of the father, son, and daughter. These discussions led to different insistences by or between the parties, M. Clifford insisting that he took a one-half interest in such effects or properties under the statute of descents and distributions, and the children insisting that a will existed by which the father, son, and daughter were respectively given an undivided one-third interest therein. To settle this family difference, the three parties in interest advised with able counsel, and their dispute as to the interest of each in what is known as the Alabama Hotel, including its lease and equipment therein, all personal property, money, and accounts of Mrs. Clifford derived from the property in question, was amicably adjusted by the execution, in triplicate, of a written agreement of date January 29, 1917. The instrument recited and provided that M. Clifford was entitled to one-half interest, J. A. Clifford and Ethel Clifford Joy each entitled to a one-fourth interest in the leasehold and equipment of the Alabama Hotel property, and the other effects and properties indicated; and it was specifically stated and acknowledged by the parties that the ownership of said property was in Mrs. Annie Clifford. This admission was as follows:

"It is also agreed that the interest of Annie Clifford, deceased, in the lease of The Alabama [Hotel] and in all the equipment, household and kitchen furniture, linen, cutlery, etc., shall be transferred and assigned to the said corporation hereinabove mentioned."

After such solemn and formal acknowledgment of the trust interest (of Mrs. Annie Clifford in said property held for her by M. Clifford) by her only heirs at law, or by all the legatees or devisees if she left a will, such parties in interest acknowledged and confirmed their respective interests in said trust properties, and provided for the formation of a corporation of said properties and the issue of stock therein to the declared owners thereof in proportion to their respective interests declared and stated by the writing signed by them—to convey and assign to the corporation "their leasehold interest in" the hotel, etc.

[9] That families may adjust their differences as to interests in common property, and that it is the policy of the law to encourage and facilitate amicable adjustment of disputes or to effectuate division of such joint property according to the agreement of all the parties in interest, has been declared and enforced by this and the English courts. Betts v. Ward, supra; Oliver v. Williams, 163 Ala. 376, 50 South. 937; Yarborough's Adm'r v. Avant, 66 Ala. 526; Ireland v. Rittle, 1 Atkyns, Eng. Ch. p. 541.

[10, 11] The written agreement in question was an extinguishment and surrender of all complainants' rights to said property under the will, taking in lieu thereof, by the writing subscribed, a less interest in the same properties and giving to M. Clifford a half interest in said properties as though Mrs. Clifford had died intestate. The written agreement was founded upon a sufficient and valid consideration—the surrender of a larger interest in the property supported by a bona fide claim or right as a devisee and legatee under the will—"by way of a family settlement." This relinquishment by the subscribing complainants and the vesting in M. Clifford (the subscribing respondent) of a half interest in the properties were sufficient consideration to support and confirm complainants' interest recognized and secured by the writing. It will be given effect according to the intent of the parties executing the same. Brown v. Lowndes County, 201 Ala. 437, 78 South. 815; Christie v. Durden, 205 Ala. 571, 88 South. 667. A disputed claim for which there is a reasonable ground is held to be a sufficient consideration to support an agreement as to such subject, without regard to the fact that the claim would prevail at law. Allen v. Prater, 30 Ala. 458; Burleson v. Mays, 189 Ala. 107, 66 South. 36.

[12] The evidence supports the writing as to its due execution and delivery and that it was founded upon a sufficient considera-

tion. It is made the foundation of one alternative of relief prayed for in the bill. It is provided by statute that every written contract, the foundation of the suit, purporting to be executed by the party sought to be charged, etc., is evidence of the existence of the debt, or that the party undertook to perform the duty for which it was given, and that it was made on sufficient consideration, "but may be impeached by plea, and, when so impeached, the burden of proof is on the defendant." Code, §§ 3966, 5324, 5332. Not being duly challenged, the consideration of the written instrument will be presumed (Bolling v. Munchus, 65 Ala. 558, 562; Bonner v. Young, 68 Ala. 37; Grimball v. Mastin, 77 Ala. 553; B. R., L. & P. Co. v. Littleton, 201 Ala. 141, 77 South. 565; Prudential Cas. Co. v. Kerr, 202 Ala. 259, 80 South. 97), and the fact of its due execution (Rich v. Thornton, 69 Ala. 473, 475; Ledbetter v. Vinton, 108 Ala. 644, 18 South. 692; Carter v. Long Bros., 125 Ala. 280, 28 South. 74). Its delivery is shown by the evidence; to this we will later advert.

[13, 14] A careful study of the evidence convinces us that said writing established the right of complainants each to a one-fourth undivided interest in said property, and of M. Clifford to the other one-half interest therein. There being no contemporaneous transfer by M. Clifford of the lease, and in the absence of a bill of sale to the personalty, the legal title remained in him; the equitable title to a one-half interest therein being confirmed and vested in complainants as cestuis que trustent. A court of equity regards beneficiaries as necessary parties in a bill for the establishment of their respective equitable interests. Town of Carbon Hill v. Marks, 204 Ala. 622, 86 South. 903; Lebeck v. Ft. Payne Bank, 115 Ala. 447, 453, 22 South. 75, 67 Am. St. Rep. 51. That is to say, by the written contract of January 29, 1917, signed by the parties representing the full interest in the property, the respective rights to relief which the chancellor has awarded by the decree were conclusively acknowledged and proved to be vested in complainants as determined by the instant decree.

[15] That the contract or writing signed by each of the parties to be bound had been delivered was evidenced on the part of respondent M. Clifford (and in accord with complainants' insistence) by his letter to his son, J. A. Clifford, July 3, 1917, as follows:

"I have your letter of the 2nd inst. containing much abuse of me, which is wholly unnecessary and accomplishes no good result. You and your sister, Ethel, will receive everything that is coming to you due from your mother's estate.

"So far as the management of the matter is concerned. Mr. *Willett's views* as to the handling of the lease proposition have been thoroughly approved and coincided with by your *attorney Mr. Sterne.* They both agree that

there is nothing for *me to do* except to wait for a purchaser to come along who will buy *our lease* at a reasonable price; and there is no use to slaughter a valuable piece of property by selling the lease for much less than its real value.

"It is possible that *we may* have trouble with Zinn and Warden, but *we* will have to look out for that and depend upon the law to preserve the inviolability of the *lease contract.* Mr. Warden is entirely solvent, and if I am ousted, I will have my claim for damages under the lease." (Italics supplied.)

When this letter is interpreted in the light of the evidence, the name "Ethel" as used meant Mrs. Ethel Clifford Joy; Mr. Willett was the writer's attorney, and Mr. Sterne that of the complainants; "our lease" meant that of March 17, 1914, Alabama Hotel Company, by F. G. Warden, president, to M. Clifford; "Mr. Zinn" was the mortgagee in the mortgage by Anniston Hotel Company, when the same was leased to Mr. Warden by its owners on February 1, 1913, and later subleased by him to M. Clifford. No provision in the lease or assignments thereof prevented the subleasing of the hotel to Clifford.

The Mr. Willett referred to M. Clifford's letter to J. A. Clifford was the attorney who drew the writing evidencing the "family settlement" (of January 29, 1917), and who testified that he was not clear on the delivery of the same, or, if so delivered, when; he did not swear that the contract was not delivered. M. Clifford did not deny its due execution and delivery; he treated it as binding on the parties on July 3, 1917, when writing his son. Such was his interpretation, notwithstanding the former difficulty with the son. The evidence otherwise establishes the fact that theretofore he had a personal or unpleasant encounter with the son. This state of affairs and its possible effect upon the family relations and property rights established by said writing of January 29, 1917, were commented on by said attorney for M. Clifford in a letter to Mrs. Ethel Clifford Joy, of April 6, 1917, as follows:

"I have your letter by special delivery of April 4th and carefully note contents. Since writing your letter, terrible events have transpired, as you have no doubt heard, which has resulted in Bert [meaning J. A. Clifford] leaving Anniston. Before leaving, however, he gave Mr. Neil Sterne power of attorney to represent him in everything.

"Mr. Sterne and I are co-operating together, and we will try to secure a purchaser for the lease at an early date and at an advantageous price, and we will expect your co-operation. That is the only thing to do."

Thus it was shown that not only M. Clifford but his attorney and agent were treating the agreement as executed, delivered and binding on the three parties thereto long after the difficulty between the father and son. Mr. Willett testified that the incorporation papers provided for in the agreement were prepared by him pursuant to its terms; and

there was a tendency in the evidence to explain that the same was not "filed" because of a delay occasioned by Mr. Warden, the lessor to Clifford. Clifford's attempted explanation of the use of the expression "our lease"—in referring to that by Warden to M. Clifford of March 17, 1914—in his letter to J. A. Clifford ante, is unsatisfactory. His letter was to the contrary. His promise therein was that "you and your sister, Ethel, will receive everything that is coming to you due from your mother's estate"; his statement that his attorney's (Mr. Willett's) views as to the handling of the "lease proposition" were concurred in by J. A. Clifford's attorney (Mr. Sterne)—as to the sale of "our lease"; his warning that "we may have trouble with" the party Zinn (who had had some difficulty or misunderstanding with M. Clifford; and was holding the mortgage on the real estate of the hotel company), and "we will have to look out for that" and preserve the "inviolability of the lease contract"—all these expressions were confirmatory of the written agreement of January 29, 1917, and that it was binding on M. Clifford, J. A. Clifford, and Mrs. Ethel Clifford Joy.

[16] Conceding for the sake of the argument that the statute against parol trusts has been properly invoked by the pleadings (Milliken v. Faulk, 111 Ala. 658, 20 South. 594), complainants' introduction and proof of the foregoing writings declaring the trust, signed by the respondent, satisfies the requirements of the statute. Code, § 3412. To repeat, the declaration of the trust signed by M. Clifford admitted or acknowledged the interest of Mrs. Annie Clifford before and at the time of her death; created or proved complainants' equitable interest, its nature and subject-matter and the objects of the trust with certainty; and recited that the lease referred to was that made by F. G. Warden to M. Clifford of the hotel property. In Howison v. Baird, 145 Ala. 683, 40 South. 94, it was held that the statute was satisfied by a memorandum less formal and explicit than that under consideration, it being inclosed in a letter written by Howison to an agent containing the statement that—

"Baird has no interest in that property until the property pays me back my money and eight per cent. interest, and then he has one-half interest, less whatever money I have let him have on his personal account."

Of this declaration of the trust, the court said:

"Complainant had one-half interest in the property when the property had paid Howison back his money, and eight per cent. interest thereon"

—which was, by necessary inference, an agreement to hold the title conveyed to him in trust for the repayment of such sums to him, and then for the benefit of himself and complainant in equal shares. If the written acknowledgment in Howison v. Baird, supra, was sufficient, how much more satisfactory for the purpose of the statute are the specific recitals in the agreement of January 29, 1917, that the lease was executed by Warden to M. Clifford; that J. A. Clifford and Ethel Clifford Joy had undivided interests therein as indicated; and it was a natural inference from the agreement that M. Clifford held the title acquired from Warden in trust for such purposes and parties, and to the extent therein indicated.

[17] To create a trust no particular form of words is required; but any instrument in writing, signed by the party at the time of its creation or subsequently, manifesting the nature, subject-matter, and objects of the trust with reasonable certainty, may suffice. Bibb v. Hunter, 79 Ala. 351; White v. Breen, 106 Ala. 159, 172, 19 South. 59, 32 L. R. A. 127. See, also, Chancellor Kent in Steere v. Steere, 5 John. Ch. 1, 9 Am. Dec. 256. Mr. Chief Justice McClellan thus follows Bibb v. Hunter, supra, and approves the text of Perry on Trusts:

"'There is no particular formality required or necessary in the creation of a trust. All that is required is written evidence supplying every essential detail of the trust. * * * Any agreement or contract in writing, made by a person having the power of disposal over property, whereby such person agrees or directs that a particular parcel of property * * * shall be held or dealt with in a particular manner for the benefit of another, in a court of equity raises a trust in favor of such other person against the person making such agreement, or any other person claiming under him voluntarily or with notice; *and the statute of frauds will be satisfied if the trust can be manifested or proved by any subsequent acknowledgment by the trustee, as by an express declaration, or any memorandum to that effect, or by a letter under his hand, or by his answer in chancery, or by his affidavit, or by a recital in a bond or deed, or by a pamphlet written by the trustees, or by an entry in a bank deposit book; in short, by any writing in which the fiduciary relation between the parties and its terms can be clearly read.*' 1 Perry on Trusts, § 82. And this is the law in Alabama with the qualification that the creating or declaratory writing must be signed by the party creating or declaring the trust. Code, § 1041; McCarthy v. McCarthy, 74 Ala. 546, 552; Gravlee v. Lamkin, 120 Ala. 210. Nor is it necessary that the trust and its terms should be found in one letter; it is sufficient if they appear from any number of letters or writings." Wiggs v. Winn, 127 Ala. 621, 626, 627, 29 South. 96, 97.

This statement of the rule has been fully recognized and approved (in Browne on Statute of Frauds [5th Ed.] §§ 97–112) by the later decisions of this court. Jacoby v. Funkhouser, 147 Ala. 254, 261, 262, 40 South. 291; Dozier v. Dozier, 201 Ala. 174, 77 South. 700. See Corley v. Vizard, 203 Ala. 564, 84 South. 299; Bradford v. Buttram, 205 Ala. 599, 88 South. 829; authorities collected in 39 Cyc.

54. The latest citation on this point in Annotations to Corpus Juris, Permanent Volume, 1921, was to Viele v. Curtis, 116 Me. 328, 331, 101 Atl. 966, 967, where Mr. Justice Bird said:

"It is undoubted law, that a letter subscribed by the trustee, whether addressed to, or deposited with, the cestui que trust or not, or whether intended when made to be evidence of the trust or not, or whether made at the time the legal title was conveyed or later, will be sufficient to establish the trust when the subject, object and nature of the trust, and the parties and their relations to it, and each other appear with reasonable certainty."

[18] It is not necessary that the writing declaring and manifesting the existence of the trust be executed contemporaneously with the transfer of the legal title and creation of the trust, but is sufficient if executed subsequently thereto. 39 Cyc. 54, and notes.

The instrument of January 29, 1917, is sufficient declaration of a beneficial interest without its reference to the lease from Warden to M. Clifford; and when this is referred to the trust is "manifested" and "proved" without the subsequent letter of acknowledgment by the trustee. However, these writings signed by M. Clifford make specific reference to the lease in question, and, being before the court and construed together, are sufficient. That is to·say, without other evidence the writing of January 29, 1917, would establish the existence of the trust to the extent indicated in behalf of J. A. Clifford and Mrs. Ethel Clifford Joy in said properties, and furnished the court the necessary proof warranting the decree, no particular form or words being necessary to create a trust in lands; a signed letter may be. sufficient. Bibb v. Hunter, 79 Ala. 351; Wiggs v. Winn, supra.

[19] Appellant insists that the evidence establishes a forfeiture of the lease by Clifford. Without deciding that there were grounds for forfeiture, the fact remains that the Anniston Hotel Company did not forfeit, pursuant to the provisions for forfeiture in the contract or lease (by that hotel company with F. G. Warden, and the agreement by the Anniston Hotel Company and certain of the minority stockholders); the eighth paragraph thereof being:

"In the case of default by the party of the second part in complying with any of the terms of this lease and a continuance of such default for a period of thirty days, or in case the party of the second part should be declared insolvent or· bankrupt, by any court of competent jurisdiction, the party of the first part may at its option terminate this lease on thirty days' notice to the party of the second part, in writing or to the person or corporation in the actual occupancy of said hotel building."

[20, 21] It is required that 30 days' notice of the termination of the lease be given. No such notice was given; merely a list of desired improvements to the hotel was handed M. Clifford. This was not more than a bill of particulars of defects that did not even contain a statement or intimation of the intention of the hotel company or of said stockholders thereof to insist on a forfeiture of the lease according to its terms. This was far short of the affirmative action required to declare the lease forfeited. A fair consideration of the testimony of complainants and that of respondent M. Clifford shows that no sufficient grounds of forfeiture exist. And as insisted by counsel for appellees, if the right of forfeiture existed at the time of the attempted sale of the lease by M. Clifford to Hodge, it was not insisted upon or waived by the parties in interest. Conditions in the lease contract may be waived by the party in beneficial interest. Home Guano Co. v. Int. Agri. Corp., 204 Ala. 274, 85 South. 713; Lowy v. Rosengrant, 196 Ala. 337, 342, 71 South. 439. This is aside from the proposition that· equity abhors forfeitures, balances consequences to the parties, and seizes upon slight circumstances to declare a waiver. Root v. Johnson, 99 Ala. 90, 10 South. 293; Hamilton v. Terry F. & L. Co. (Ala. Sup.) 91 South. 489;[2] Franklin v. Long, 191 Ala. 310, 68 South. 149; 1 Pom. Eq. Jur., 450. The Anniston Hotel Company prosecutes no appeal from the recall.

It would prolong this discussion unnecessarily to detail the evidence, the natural inference from which showed notice or knowledge on the part of Hodge of complainants' equity before his purchase of M. Clifford's interest in the properties. We are satisfied that if he had followed up by inquiry the facts known or made known to him, he would have ascertained the precise nature, character, and extent of the equity of Mrs. Ethel Clifford Joy and J. A. Clifford. He had the opportunity in Mr. Sterne's office to be fully informed if he was not. We are of· the opinion that the evidence sufficiently shows he was so informed of the nature and· extent of complainant's interest in the property before there was a consummated sale by Clifford to Hodge of the former's interest in the property, and before payment by the latter in · currency and under circumstances which were unusual or without the due course of such business transactions.

[22] Complainants were proper parties to· maintain the suit in equity to redress a wrong for fraud and collusion of the administrator, M. Clifford, for his own benefit and as opposed to the interest and property rights of his children and heirs at law of Annie Clifford, deceased. Demand was made upon ˙him by his children that he rescind the sale; his refusal is averred and shown. There being no debts of the estate of Mrs. Clifford, there was no necessity for an administration except for the purpose of distri-

---

[2] 206 Ala. 622.

bution, and in a court of equity the distributees are entitled to maintain such a suit. Griffin v. Griffin (Ala. Sup.) 90 South. 907;[3] Teal v. Chancellor, 117 Ala. 612, 23 South. 651; Winsett v. Winsett, 203 Ala. 373, 377, 83 South. 117. Especially is this true when it is proved that an administrator is insolvent or that his interests are antagonistic to the heirs at law or .the next of kin, or that he is guilty of fraud or collusion with the party to be sued, as affecting complainants' rights in the trust properties. In U. S. Fidelity & Guar. Co. v. Sinclair (Ala. Sup.) 90 South. 298,[4] the bill was by the wards or cestuis que trustent against surety of the insolvent guardian as the sole respondent, and it was held that the· administrator of such guardian was not a *necessary* though a proper party, it being averred and proved that his estate was insolvent. Fulgham v. Herstein, 77 Ala. 496; Frierson v. Travis, 39 Ala. 150.

[23] We may observe of the proper parties respondents to the bill that it is insisted that the administrator of the estate of Mrs. Annie Clifford, deceased, should have been made a party. The bill avers the status of M. Clifford, his interest in his individual capacity, and that he is the administrator of said estate of Mrs. Clifford, deceased; that there were no debts against the estate which may be proved, the time therefor having elapsed. As to this estate, devisees or heirs at law thereof, all parties in interest were before the court. Winsett v. Winsett, supra. Moreover, there is no demurrer or plea in abatement sufficiently presenting the question of nonjoinder of a party or challenging the right to proceed to final decree for lack of said personal representative as a party to the bill. Such was the recent decision in Griffin v. Griffin, supra, where it is said:

"We do not think that this case should be reversed because of the absence of an administrator, as the bill averred that this was all the property owned by the decedent and this question was not raised by demurrer."

However this may be, no reversible error intervened as to proceeding to final decree with the parties that were before the court. Berlin v. Sheffield Coal, Iron & Steel Co., 124 Ala. 322, 26 South. 933; Morningstar v. Querens, 142 Ala. 186, 37 South. 825. The answer and agreement of counsel for respective parties was to the effect that M. Clifford individually and as administrator of the estate of Mrs. Annie Clifford, deceased, and the Anniston Hotel Company each adopted and filed as answer of each of said respondents the answer filed by H. L. Hodge on November 13, 1918. Potts v. Court of Comrs., 203 Ala. 300, 82 South. 550.

[24] As to proper and necessary parties to a suit in equity, a general statement of the

rule of English practice is that, where a party comes to a court of equity to seek for that relief which the principles there acted upon entitle him to receive, he should bring before the court all such parties "as are necessary to enable it to do complete justice, and that he should so far bind the rights of all persons interested in the subject, as to render the performance of the decree which he seeks perfectly safe to the party called upon to perform it, by preventing his being sued or molested again respecting the same matter, either at law or equity." Sims' Ch. Pr., p. 74, § 123; 1 Daniell's Ch. Pl. & Pr. 241.

Mr. Pomeroy says that—

"All persons in whose favor or against whom there might be a recovery, however partial, and also all persons who are interested, although indirectly, in the subject-matter and the relief granted, that their rights or duties might be affected by the decree, although no substantial recovery can be obtained either for or against them, shall be made parties to the suit; * * * so that the relief may be properly adjusted among those entitled, the liabilities properly apportioned, and the incidental or consequential claims or interests of all may be fixed, and all may be bound in respect thereto by the single decree." 1 Pom. Eq. Jur. (4th Ed.) § 114.

Statements of necessary parties by Mr. Story are:

"* * * It is not all persons who have an interest in the subject-matter of the suit, but, in general, those only who have an interest in the object of the suit, who are ordinarily required to be made parties. Story's Eq. Pl. (10th Ed.) p. 75, §§ 72, 136 et seq. * * * The plaintiff may, by the frame of his bill, as by waiving a particular claim, avoid the necessity of making persons, who might· be affected by it, parties, though that claim might be an evident consequence of the rights asserted by the bill against other parties," provided it is not "done to the prejudice of others. Page 148, § 139. * * * In all cases, where the assignment is absolute and unconditional, leaving no equitable interest * * * in the assignor, and the extent and validity of the assignment is not doubted or denied, and there is no remaining liability in the assignor to be affected by the decree, it is not necessary to make the latter a party. Page 160, § 153, and many authorities there collected. * * * Where a suit is brought for the execution of a trust by or against those claiming the ultimate benefit of the trust after the satisfaction of prior charges, it is not necessary to bring before the court the persons claiming the benefit of such prior charges; for their interests are not intended to be touched by the bill. Thus, where a bill is brought for the due application or distribution of a surplus to be paid after payment of debts and legacies, or other prior incumbrances, it is not necessary to make such prior creditors, legatees, or other incumbrancers, parties." Page 154, § 148.

[25] Such is the application of the rule made by this court. Judge Brickell digests

the authorities on the point, saying all persons having a material interest in the subject-matter of a suit must be made parties on the principle that no man's rights should be controverted in a court of justice, unless he has full opportunity to appear and vindicate them, and that complete justice may be done and future litigation avoided; the performance of the decree being safe because of the presence in court of all who have an interest in its subject-matter. To be a necessary and indispensable party to a bill in whose absence the court will not proceed to a final decree, one "must have a material interest in the issue which will be necessarily affected by the decree" before it will be said the court may not proceed in his absence. 3 Brickell's Dig. p. 368; Wilkinson v. May, 69 Ala. 33. Judge Brickell's statement of the rule is that from Story's Eq. Pl., § 72, reproduced in Prout v. Hoge, 57 Ala. 28, 30.

Judge Mayfield thus states the rule:

"It is only persons who have a *right or interest in the subject-matter* of controversy which may be affected by the decree who should be made parties to a suit in equity. * * * To constitute a necessary and indispensable party to a bill, in whose absence the court will not generally proceed to a decree, he must have a material *interest* in the issue which will be necessarily *affected by the decree.*" Mayfield's Dig. p. 255, §§ 1441–1443.

In Michie's Digest, Mr. Story's text, supra, section 72, is quoted as the rule.

In Perkins v. Brierfield, 77 Ala. 403, a suit to subject real estate to a lien, sell the same, and distribute the proceeds, of necessity affecting the rights of a junior mortgagee, it was held that the rights of such mortgagee (Carter) could not be taken from him without opportunity to be heard as a party to the suit. The text of Mr. Story is followed by the statement that—

"It is a general rule that all persons who are legally or beneficially interested in the subject-matter of the suit—who have a legal or equitable estate, and whose rights and interests are to be affected, or sought to be concluded by the decree—are necessary parties to the bill," unless it is also shown that their interest has ceased, or has been vested in some other person who is a party. Hamilton v. Clancey, 196 Ala. 194, 72 South. 15.

In Keith v. McCord, 140 Ala. 402, 37 South. 267, the fact is adverted to that it is shown that Mrs. Stone, the decedent, had been paid her distributive share of the estate in full before her death; and for this reason it was held that there was no necessity to make her husband, children, or personal representative a party to a bill against sureties on bond of deceased administrator for settlement of the estate of which Mrs. Stone was an heir at law. The reason for the holding was that her next of kin had no interest in the assets sought to be distributed, and that—

"Only persons who have a right or interest, legal or equitable, in the subject-matter of controversy, which may be affected by the decree, * * * can be made parties to a suit in equity. Persons as to whom no decree can be rendered on a hearing, ought not to be made parties." Jones v. Caldwell, 116 Ala. 364, 367, 22 South. 456, 457; Huckabee, Adm'r, v. Swoope, 20 Ala. 491.

[26] The application of these general principles as to necessary parties to a bill in equity has evolved corollaries, which are generally stated as:

(1) That all persons holding the legal title in the subject-matter of the litigation must be made parties to the bill—as a mortgagee who has assigned the *chose in action,* and not mortgage, is held a necessary party to a bill by such transferee of the *chose in action* to foreclose (Prout v. Hoge, supra; Langley v. Andrews, 132 Ala. 147, 31 South. 469); or a vendor who has transferred a purchase-money note, *by delivery and not by a due assignment thereof,* is a necessary party to a suit on the note to foreclose the vendor's lien, since the legal title to the note remained in the transferor by reason of his failure of proper transfer (Knight v. Knight, 103 Ala. 484, 15 South. 834; Davis v. Smith, 88 Ala. 596, 7 South. 159); or where the assignment was not effective to convey the legal title, or was not absolute and unconditional (Broughton v. Mitchell, 64 Ala. 210, 220); or its extent or validity is disputed (Broughton v. Mitchell, supra; Story, § 153).

[27] (2) That the whole title to the subject-matter of the suit should be before the court held to include joint owners, distributees, and next of kin, in bills for distribution, division, or partition (Foster v. Ballentine, 126 Ala. 393, 28 South. 529; Parker v. Parker, 99 Ala. 239, 13 South. 520, 42 Am. St. Rep. 48; Teague v. Corbitt, 57 Ala. 529); and in bills to compel the administration and settlement of an estate (Parker v. Parker, supra; Gould v. Hayes, 19 Ala. 438).

[28] (3) That the whole title is not required to be brought before the court in cases where prior or superior interests or claims upon the title are not affected by the suit or decree to be rendered, or the validity or priority of which is not disputed. Broughton v. Mitchell, supra; Story, § 153. A pertinent application of these corollaries is made in a bill for foreclosure by a junior mortgagee, lienholder, or incumbrancer against a like junior mortgagee, lienholder, or incumbrancer, where it is said that a senior holder is not required to be made a party, since the consequent decree could not affect the validity of the right, lien, or interest of such superior mortgagee, lienholder, or incumbrancer. Bolling v. Pace, 99 Ala. 607, 611, 12 South. 796; West v. Henry, 185

Ala. 168, 64 South. 75; Butler v. Henry, 202 Ala. 155, 156, 79 South. 630; Singleton v. U. S. F. & G. Co., 195 Ala. 506, 512, 70 South. 169: Whiteman v. Taber, 203 Ala. 496, 501, 83 South. 595; Davis v. Taylor Co., 158 Ala. 227, 47 South. 653; Equitable Mortg. Co. v. Finley, 133 Ala. 575, 579, 31 South. 985; Freeman v. Stewart, 119 Ala. 158, 164, 24 South. 31; Mutual Association v. Wyeth, 105 Ala. 639, 644, 17 South. 45; Orr v. Blackwell, 93 Ala. 212, 8 South. 413. This, in effect, is the application of the rule as stated in Keith v. McCord, supra.

Adverting to the facts in Bolling v. Pace, supra, the controversy was between second and third mortgagees, the superiority of the claim of the first mortgagee being uncontested in the suit in equity to foreclose the junior mortgage. Determining the issue involving only the rights of such junior mortgagees, the justice said:

"Rufus Cook having thus at law the legal title to the land in controversy, paramount to the title of complainants under the mortgage, and in equity the older and superior mortgage, should not have been made a defendant to the present bill. This is not the proceeding in which to determine and have settled the absolute final title to mortgaged realty. The purpose of a foreclosure suit is to settle *interests claimed or existing in subordination to the mortgage.* Only those should be made parties who are, or who claim under, the parties to the instrument. When the bill shows that a defendant asserts title paramount to the mortgage it is demurrable. When it avers that a party defendant claims an interest which is subordinate to the mortgage, and the answer of such party discloses that he relies upon a title paramount, the bill should be dismissed as to him, unless the complainant is prepared to prove that such claim, interest or title in fact accrued subsequent to the mortgage."

This rule has been approved or followed in our latest cases. West v. Henry, supra; Singleton v. U. S. F. & G. Co., supra; Whiteman v. Taber, supra; Butler v. Henry, supra; Burton v. Steverson, 206 Ala. 508, 91 South. 74.

In Randle v. Boyd, 73 Ala. 282, 286, involving a proceeding to enforce a vendor's lien, subject to and in subordination of the right of the mortgagee holding a title superior to both vendor and vendee, such mortgagee was not a necessary party. The court said:

"The rule as to parties in the present proceeding is obviously analogous to that prevailing in ordinary foreclosure suits. The general rule, in such cases, is settled to be, that *adverse claimants* cannot be made parties for the purpose of litigating their title in a court of chancery. The only proper parties are the mortgagor and mortgagee, and those who have acquired any interests from them *subsequent* to the mortgage. An adverse claimant is a stranger to the mortgage and the estate. His interests can in no way be affected by the suit, and he has no interest in it"—the decree to be rendered."

207 ALA.—14

In Whiteman v. Taber, supra (an application of the principle recognized and announced in Bolling v. Pace, supra), a suit to redeem by assignee of the statutory right of redemption against the purchaser at foreclosure, where the rights of prior or junior mortgagees of the original mortgagors were averred and shown not affected, it was held not necessary to make such mortgagees parties. The same rule of necessary parties in equity was applied in Burton v. Steverson, supra, where a bill by Steverson, the lessor of turpentine lands, was maintained against the sublessee, Burton, and the contract of lease made by complainant with first lessees, Howell & Hoover, was construed and relief was granted against waste. The due assignment of the lease by Howell & Hoover to Burton being admitted, they were not necessary parties that would prevent a decree in a bill by the landlord against such subtenant or assignee.

[29] Under the instant bill, Warden, the Alabama Hotel Company, or Warden as trustee, were each indifferent to the relief granted, as affecting the leasehold interest of the Anniston Hotel Company, that of the subtenants, the Cliffords, or of Hodge, the assignee and vendee of M. Clifford's interest in all the properties. The absence of disinterested or "not necessary" parties will not be taken by the court ex mero motu to deny relief for the alleged fraud of M. Clifford and Hodge that only affected M. Clifford's children, and for the accounting. The superior right of the holder of the chattel mortgage was admitted, and was not sought to be impaired or subordinated by the pleadings, proof, or the decree. It could not be maintained against foregoing authorities that there was an absence of a necessary party because Mr. Zinn or other holder of a prior and superior mortgage on the real property was not a party to this bill; so Warden as trustee and the holder of the superior chattel mortgage or his cestui que trust were not necessary parties to a bill declaring subsequent rights in the personalty.

The two-fold purpose of the bill being to uncover the alleged fraud between Clifford and Hodge as against complainants, and to set aside the conveyance to Hodge (if fraudulent) to the extent of the respective interests of J. A. Clifford and Mrs. Ethel Clifford Joy, and for accounting, such relief in no wise affects or impairs the right, title, or interest of Warden as trustee for the hotel company as the holder of the chattel mortgage. If the mortgage was not paid at maturity, the right of foreclosure was available under the decree. Neither of the parties to the bill questioned the superior title of said mortgagee, nor sought to divest him of his right, title or interest in the property embraced in his chattel mortgage. As trustee, Warden would have no more interest in the questions presented by pleading

and evidence, and determined by the decree, than he would have in any controversy about the property between a second and third mortgagee, involving a question of priority as between such junior mortgagees. However, the decree directed that Hodge be allowed credit for all proper payments and expenditures made by him in complying with the obligations to Warden, the Alabama Hotel Company, or the Anniston Hotel Company by virtue of the undertakings assumed by M. Clifford in the purchase and due assignment to Clifford of the lease and personal properties in question, and credit for the due rentals paid to the landlord and for all payments made by Hodge to Warden or the Alabama Hotel Company or assigns, under and by virtue of the agreement of Clifford to pay the remaining deferred installments of purchase money as specified in said instruments executed on March 17, 1914. It would have been sufficient had it not so safeguarded Warden's interest as mortgagee.

It is not necessary to discuss each of the authorities on which appellant has rested his insistence of the absence of necessary parties that this court will take ex mero motu, and not proceed to judgment. It is sufficient to say Smith v. Murphy, 58 Ala. 630, sought to divest title from the heirs of Tanner who were indispensable parties; Winn v. Fitzwater, 151 Ala. 171, 44 South. 97, was a bill to declare a deed a mortgage; hence the heirs of the deceased grantee were necessary parties, since their title could not be changed from an absolute to a conditional title without giving them an opportunity to be heard; in Harris v. Johnson, 176 Ala. 445, 58 South. 426, the bill was specific performance of a contract made by a deceased vendor; the title, passing on his death to his heirs, could not be taken from them without their being parties; and in Russell v. Bell, 160 Ala. 480, 49 South. 314, a bill to cancel a trust deed and for sale for division, it was held that it was necessary in partition and accounting that heirs at law whose title would be concluded in the accounting should be represented, such cotenants being affected by such proceedings. The foregoing authorities are not in point. The judgment of the circuit court in equity is affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and MILLER, JJ., concur.